KANSAS CITY, M. & O. RY. CO. OF TEXAS et al. v. WHITTINGTON & SWEENEY et al.

(Court of Civil Appeals of Texas. Amarillo. Jan. 25, 1913. Rehearing Denied Feb. 22, 1913.)

1. APPEAL AND ERROR (§ 742*)—RECORD—"FAITHFULLY."

Court of Civil Appeals rule 31 (142 S. W. xiii), requiring the statement to a proposition to be made "faithfully" with reference to the whole of the record having a bearing on the proposition, and upon counsel's professional responsibility, without intermixing arguments, etc., means that the statement must be made truthfully, sincerely, and accurately; and hence all of the facts testified to which would throw light on the question of the sufficiency of the evidence to sustain the verdict should be given in a statement following that proposition.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*

For other definitions, see Words and Phrases, vol. 3, pp. 2652, 2653.]

2. CARRIERS (§ 228*) — LIVE STOCK — SUFFICIENCY OF EVIDENCE.

Evidence, in an action for damage to cattle en route, held to sustain a verdict for plaintiff.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957–960; Dec. Dig. § 228.*]

3. EVIDENCE (§ 474*)—LIVE STOCK—OPINION EVIDENCE—VALUE.

Where it appeared that the market value of cattle at K. was the same as that at destination, a witness, who based his testimony upon his knowledge of their value at K., could testify as to what the cattle were worth at destination.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2196–2219; Dec. Dig. § 474.*]

4. APPEAL AND ERROR (§ 1051*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

Where, in an action for loss of cattle en route, it appeared that the market value of the cattle at K. was the same as at destination, any error in admitting evidence as to their value at destination, by a witness who based his testimony upon knowledge of the market value at K., was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

Appeal from District Court, Hardeman County; S. P. Huff, Judge.

Action by Whittington & Sweeney against the Kansas City, Mexico & Orient Railway Company of Texas and others. From a judgment for plaintiffs against two of the defendants, the latter appeal. Affirmed.

L. W. Allred, of Chillicothe, D. J. Brookreson, of Benjamin, and H. S. Garrett, of San Angelo, for appellants. H. B. White, of Clarendon, for appellees.

HALL, J. Appellees, Whittington & Sweeney, sued the Kansas City, Mexico & Orient Railway Company of Texas, the Kansas City, Mexico & Orient Railway Company, and the Missouri Pacific Railway Company for $5,952, damages to a shipment of 47 cars of cattle from Midland, Tex., to Pontiac, Kan., over the defendants' lines of railroad. The trial before a jury resulted in a judgment in appellees' favor in the sum of $3,782.51, equally divided against the Kansas City, Mexico & Orient Railway Company of Texas and the Kansas City, Mexico & Orient Railway Company, and in favor of the Missouri Pacific Railway Company. From this judgment, both divisions of the Orient Railway have appealed.

The first assignment of error urged in the

brief of the Kansas City, Mexico & Orient Railway Company of Texas is that the court erred in refusing to set aside the verdict of the jury and the judgment of the court, based thereon, and to grant a new trial, for the reason that the verdict and judgment are contrary to law and evidence and unsupported by the evidence. Four propositions, followed by a single statement, are set forth under this assignment. An assignment of this kind carries with it the idea that there is no evidence in the record which would warrant the jury in returning a verdict. Rule 31 for the Courts of Appeals (142 S. W. xiii), governing the manner of briefing such an assignment, is: "To each of said propositions there shall be subjoined a brief statement in substance of such proceedings or part thereof contained in the record as will be necessary and sufficient to explain and support the proposition, with a reference to the pages of the record." This had not been done in this case. But the serious objection to the brief is the violation of the following sentence of said rule 31: "This statement must be made *faithfully* in reference to the *whole* of that which is in the record having a bearing upon said proposition, upon the *professional responsibility* of the counsel who makes it, and without intermixing with it arguments, reasons, calculations or inferences."

In the case of Blunt v. Houston Oil Co., 146 S. W. 248, Reese, J., said: "The seventh assignment, which relates to the refusal of the court to grant a new trial on the ground that the overwhelming weight and preponderance of the evidence establish the identity of appellants' ancestor with the grantee of the land, is not followed by any proposition, and for statement we are referred to the statement under the fourth assignment. This latter statement only purports to be a statement of *some* of the evidence of heirship and identity. None of the evidence relied upon by appellee is given. Such a statement is entirely insufficient to authorize us to consider the assignment. * * * The statement under the cross-assignment is wholly insufficient to require us to consider it. A proper statement would have included the substance of *all the evidence* upon this issue, and not merely have reference to a statement under an entirely different proposition, where the evidence upon all the issues is attempted to be set out." In Noland v. Weems, 141 S. W. 1036, Peticolas, J., said: "It is apparent, therefore, that the statement presented in the brief, which was the only reference to the defendants' testimony supporting their limitation title, was defective, in that it was not a statement made up from *all that was in the record.* * * * In a record as large as the one in this case, with issues as complicated as we find in this case, the appellate court must, of necessity, rely upon counsel for at least a reference to the place in the record where *all*

*the testimony* may be found upon which they rely to support the propositions which they submit. The effect of the defective statement was to present a proposition of law supported by certain facts out of all the facts in a very large record. Having based our opinion on said facts so presented and on such additional facts as we were able to find on the subject, we are now presented, on motion for rehearing, with facts never before mentioned as being relied on in support of the propositions advanced, and asked to file additional conclusions of fact based on them. * * * As it is now apparent that said statement was not made up of *all that was in the record,* we decline to consider the assignment, and hold said assignment insufficient, by reason of said defective statement, to entitle it to consideration." In Bryan v. I. & G. N. Ry. Co., 90 S. W. 698, referring to the statement which must follow the propositions under an assignment of error, it is said: "In this connection, we call attention to rule 31 of this court, in relation to the statement in briefs required to be subjoined to a proposition. This statement must be made *faithfully* in reference to the *whole of that which is in the record* having a bearing upon said proposition, upon the professional responsibility of the counsel who makes it." Again, in Alamo Fire Insurance Co. v. Davis, 45 S. W. 604, where a proposition under an assignment of error and the statement following it presents for the consideration of the court an issue with no facts in the record to sustain it, the court said: "The portions [of the insurance policy] set out do not contain any such stipulation as is stated in the brief of counsel. The rules prescribing the manner in which briefs are to be prepared, and the obligation which always rests upon counsel not to mislead the court, require statements concerning the record to be faithfully made, upon the professional responsibility of the counsel who make them. * * * Unless the statement referred to was made through inadvertence, it constitutes a plain and reprehensible violation of the rule cited; and, as the brief indicates that the counsel had the transcript before him while preparing it, it does not seem probable that the statement was inadvertently made. The proposition of law contended for is correct, but the statement submitted thereunder is not correct, and this is all that need be said in reference to this assignment of error."

[1] We quote with approval the excerpts above. To make a statement faithfully simply means to make it truthfully, sincerely, and accurately. The statement of this appellant following this assignment should have given the facts testified to by all of the witnesses, both for plaintiff and defendants, which would have thrown any light upon the question of the sufficiency of the evidence to sustain the verdict and judgment; and

we do not hesitate to say that if counsel had given it all, or had read it all, in connection with this assignment, we believe the time of this court would not have been consumed in the consideration of the assignment and the 15 pages of their printed brief, discussing it. They content themselves with quoting from the record two sentences from the testimony of one of the caretakers, who accompanied one of the trains of cattle, and part of the testimony of one of the plaintiffs. The remainder of the statement is the testimony of the three conductors, who handled the shipments from Sweetwater to Hamlin and from Hamlin to Altus. This is followed by the citation of nearly 50 authorities and 8 pages of argument.

[2] Under rules 40 and 41 (142 S. W. xiv) if no brief had been filed by appellee, this court would have been authorized to found its decision upon the statements contained in appellants' brief, and this shows the necessity for the strictest accuracy and fairness on the part of appellant in making his statements. However, in this case, appellee has challenged the correctness of appellants' statement and refers to the record, from which we learn that there is sufficient testimony to support the verdict. The witness Tom Connor testified that the cattle in his charge had very little water at Altus; that in reloading at Altus one steer fell between the loading chutes and the car and escaped; that two others escaped at Altus, through an open gate; that four of the steers got into another pen with other cattle, and were lost to the plaintiffs; that the agent at Altus, who superintended the unloading and reloading of the cattle, was the joint agent of both of the appellants, and that some of the cars were not fully loaded and some overloaded; that several head of the cattle were badly skinned and bruised, and one animal down, and had to be dragged from the car when the shipment reached Altus. It further appears that part of this shipment reached Altus in the night, was permitted to stand in the cars, and was unloaded the next morning between 6 and 8 o'clock. The testimony of one of the plaintiffs shows that when the shipment which he accompanied arrived at Sweetwater, Tex., the cattle were in good condition; that they were all standing up and were without bruises or injuries; that his train left Sweetwater between 2 and 3 o'clock in the afternoon and reached Altus about 11:30 that night; that he asked the employés to run the cattle on to Wichita, Kan., without feeding, if they could, and when told by them that this could not be done he informed them that he wanted them fed at Altus. It appears that this shipment was not unloaded until between 6 and 7 o'clock the next morning. A few of the cattle were skinned up. It was estimated that about 2 to 4 per cent. of the shipment were in that condition. Part of the train load had gotten down in the cars during the night and were tramped upon. This witness testified that there was some feed put out at Altus, but that they did not have any water, and that he was informed by the employés of the railroad that they had not water for the cattle; and it is disclosed by the record that this shipment was in transit something over 70 hours without any water at all, and that the shipment in charge of Tom Connor had very little water at Altus. It is shown that, while the shipping contracts bound the shippers to feed and water, unload and reload, the cattle, the employés of the appellants assumed to do that themselves, and that they refused to permit the shippers to take any part in the reloading; that one of the trains had trouble with the air brakes, causing many of the cattle to get down in the cars, and on account of some of the cars being overloaded the cattle when down were not able to get up, and in the cars that were not fully loaded rough jerking and handling of the train caused the cattle to be jammed to first one end of the car and then the other, resulting in skinning and bruising them; that many of the cattle had their ribs broken and caved in, horns knocked off, eyes mashed out, legs broken, hips sprained, so that they never recovered during the five months they were pastured in Kansas; that from one-half to three-fourths of the cattle on one train were badly skinned and bruised, having the hair and hide scraped off; that many of them could not stand up; that several of them had to be left between the point of destination and the pasture to which they were driven; that on account of the extent of the injuries many of the cattle would lie around on the range, and were either unwilling or unable to graze, or to go to water. The testimony of several witnesses, some of them experts in the shipment of cattle, showed that the greater part of the damages resulted by reason of the failure to give the cattle water at Altus, Okl., and because some of the cars were overloaded, and other cars did not have enough cattle in them to prevent them from being thrown down and jammed into one end of the car during the rough handling; and, since this defective loading is chargeable to both of the appellants herein, the testimony is sufficient to warrant the verdict against the Orient of Texas, as well as the Kansas City, Mexico & Orient. There was no evidence of any damage to the cattle while the shipments were being handled by the Texas & Pacific Railway Company, and from the record the jury are abundantly sustained in their conclusion that any damage which appellants insist should be charged against the Missouri Pacific Railway Company is attributable to the want of care and negligence on the part of the Kansas City, Mexico & Orient and its coappellant, the Kansas City, Mexico & Orient of Texas. The

statement of facts in this case contains more than 90 pages of typewritten matter, and, with the exception of evidence introduced by appellant from some of the trainmen handling the shipments, there is an abundance of testimony refuting appellant's contention under the first assignment. While we were not required to consider the assignment, in justice to appellant's rights we have overlooked the failure of counsel to properly brief the assignment, to the extent that we have carefully reviewed the entire evidence. This assignment is overruled.

[3, 4] The second assignment urged by appellants is that the verdict of the jury is excessive. This assignment is briefed substantially in the same manner as the first assignment, but we will nevertheless consider it in the light of the testimony. In order to properly pass upon this assignment, it is necessary to consider the third and fourth assignments, which complain of the action of the court in permitting the witness J. N. Lowman to testify as to the market value of the cattle, and to give his opinion as to what the cattle were worth at Rosalia, Kan., in the condition in which they were actually delivered. The objection to this testimony is that his knowledge of the market value of the cattle was based upon the market value of the cattle at Kansas City, and not at their destination. It appears from the record that J. O. Whittington, one of the plaintiffs, testified that the cattle were damaged, on account of the injury received in shipment, from $3 to $4 per head, not including the eight head of cattle lost in transit. The witness Henry Harber also testified, without objection, that they were damaged from $3 to $4 per head, and that he regarded the cattle as reasonably worth $50 per head. This witness testified that all of the cattle that were injured never did recover during the summer, and the cattle that had been bruised and hurt did not fatten at all. He further testified that the market value of the cattle was about the same at Rosalia as at Kansas City; that men with pastures were wanting cattle at that time; and that the market was good. This testimony was not denied by any one, and, if true, evidence of the market value of the cattle at Kansas City was properly admissible. Therefore, if we should admit that the court erred in permitting the witness Lowman to testify, the error was harmless. We overrule the second, third, and fourth assignments of error.

The appellant the Kansas City, Mexico & Orient Railway Company assigns only one error, which is that the verdict of the jury was excessive. We have heretofore shown, and we find, that evidence is abundant to sustain a verdict of $3,782.51; and the judgment is therefore affirmed.

HUFF, C. J., not sitting.