PECOS & N. T. RY. CO. et al. v. BISHOP et al.

(Court of Civil Appeals of Texas. Amarillo. Feb. 1, 1913. Rehearing Denied March 1, 1913.)

1. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—STATEMENT—SUFFICIENCY.

An assignment of error to the court's charge, in that it assumed that 133 head of plaintiffs' cattle were damaged, that expenses were incurred in holding them at the station, and that such damages and expenses were attributable to the defendants' negligence, followed by a statement setting out the charge to the effect that plaintiffs could recover no such damages or expenses to the 170 head of cattle sold by them to one L., and that the charge was applicable only to the 133 head shipped by plaintiff over defendants' line, but not showing what cattle were meant by the 170 head or how the charge, as applicable to the 133 head, assumed that defendants were negligent, will not be considered for want of a sufficient statement.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

2. TRIAL (§ 191*) — INSTRUCTIONS — ASSUMPTION OF FACT.

In an action for damages to a shipment of cattle, a charge that plaintiff could not recover damages and expenses, if any, to 170 head of cattle sold by him to L., and that the charge was applicable only to the 133 head shipped over defendant's road, was not objectionable as assuming negligence and consequent damages to the 133 head.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 420–431, 435; Dec. Dig. § 191.*]

3. APPEAL AND ERROR (§ 742*)—ASSIGNMENT OF ERROR—SEPARATE PROPOSITION.

An assignment of error, in that a charge authorized a double recovery, cannot be considered where the question of double recovery is not presented in a separate proposition under the assignment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

4. CARRIERS (§ 230*)—INJURY TO LIVE STOCK —INSTRUCTIONS—DAMAGES.

In an action for damages to a shipment of cattle, a charge that plaintiffs might recover the necessary expenses, if any, incurred for feeding and caring for the cattle while waiting for the cars provided such expenses were incurred by reason of defendants' failure to furnish cars within a reasonable time after demand therefor, and that such failure, if any, was negligence, that such expenses were not incurred by reason of plaintiffs' negligence, and were at the reasonable and customary prices charged for feed and services at the time, was not objectionable as allowing a recovery for expenses, whether or not reasonable and necessary, or as permitting recovery for expenses without regard whether they were occasioned by the plaintiffs' negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 961, 962; Dec. Dig. § 230.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**5. TRIAL (§ 252*)—DAMAGE TO LIVE STOCK—INSTRUCTIONS—DAMAGES—EVIDENCE.**

In an action for damages to a shipment of live stock, where there was conflicting evidence as to a market decline, at least as to some classes of the cattle, the refusal of defendants' requested charge that, because the evidence failed to show a market decline during the delay, there should be a finding for defendants as to any damages claimed therefor, was not error, especially where the court, at defendants' request, charged that the jury should deduct from any amount found for the plaintiff the amount that his cattle gained by advance in the market.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

**6. TRIAL (§ 260*) — INSTRUCTIONS — REPETITION.**

Where the charges given, including one requested by defendant, sufficiently instructed as to damages, the court was not required to repeat an instruction thereon.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

**7. APPEAL AND ERROR (§ 728*)—ASSIGNMENTS OF ERROR — SUFFICIENCY — POINTING OUT OBJECTION.**

An assignment of error, to the admission of certain long answers to long interrogatories on the grounds that they were not responsive and stated a mere conclusion, in evidence, will not be considered where it does not point out what part of the answer was not responsive, and what part was the opinion or conclusion of the witness, especially where some, if not all, of the questions were admissible.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3010–3012; Dec. Dig. § 728.*]

**8. CARRIERS (§ 47*)—AGENTS—AUTHORITY TO CONTRACT TO FURNISH CARS.**

A railroad station agent has power to contract that the railroad will furnish cars at a named place and date for the transportation of freight so as to bind the company.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 107, 108, 134–141, 204; Dec. Dig. § 47.*]

**9. APPEAL AND ERROR (§ 1051*) — HARMLESS ERROR — ADMISSION OF EVIDENCE — FACTS OTHERWISE SHOWN.**

The admission of plaintiffs' evidence tending to prove that a certain person was station agent was harmless where defendant proved by such person that he was its station agent.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

**10. APPEAL AND ERROR (§ 742*)—ASSIGNMENT OF ERROR — PROPOSITION SUPPORTING ASSIGNMENT.**

A statement showing that a conversation was between defendant's agent and the witness does not support an assignment of error to the admission of testimony of the witness as to a conversation between the agent and plaintiff.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

**11. EVIDENCE (§ 244*) — DECLARATIONS — STATEMENT OF RAILROAD AGENT.**

Acts and declarations of a railroad station agent, authorized to contract that the railroad would furnish cars at a certain time and place, with reference to his agreement to do so, are to be treated like those of any other person authorized to contract, and are admissible when a controversy arises as to what his agreement was.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 916–936; Dec. Dig. § 244.*]

**12. EVIDENCE (§ 244*)—HEARSAY—STATEMENT OF OTHER PERSON.**

In an action for damages to a shipment of cattle, the testimony of a witness as to a conversation between plaintiff and defendant's agent as to plaintiff's order of cars for a certain date, and that the agent exhibited to witness the record showing that the cars had been ordered by plaintiff for that date, was not inadmissible as hearsay.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 916–936; Dec. Dig. § 244.*]

**13. WITNESSES (§ 248*)—EXAMINATION—RESPONSIVENESS OF ANSWER.**

Upon defendant's question whether it was not a fact that the cattle were handled through to market with reasonable care and without unusual jerking or rough handling of the train, an answer that as a matter of fact witness accompanied the shipment for a part of the way, and that, with one exception, he never saw a train handled so roughly and so much jerking, was responsive.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 861–863; Dec. Dig. § 248.*]

**14. EVIDENCE (§ 471*)—OPINION EVIDENCE—CONCLUSION OR FACT.**

The evidence of the witness who accompanied the shipment of cattle for a part of the way that, with one exception, he had never seen a train handled so roughly or so much jerking, stated rough handling as a fact.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

**15. EVIDENCE (§ 474*)—OPINION EVIDENCE—COMPETENCY OF EXPERT.**

A witness who stated in part his knowledge of the particular cattle which he accompanied in transit, and that he saw them while waiting for the cars, and that he had about 16 years' experience in handling and dealing with cattle, that he handled cattle from one car load to as high as two thousand head in a year, and that he could tell what the shrinkage would be per head in transit and while being held waiting for cars, was competent to state that the cattle shrank about 50 pounds per head from the time he saw them while awaiting cars until they reached destination.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2196–2219; Dec. Dig. § 474.*]

**16. EVIDENCE (§ 472*)—OPINION EVIDENCE—CONCLUSION.**

In an action for damages to a shipment of cattle, testimony that the cars were handled with care was properly excluded as stating an opinion and conclusion on a mixed question of law and fact on which the jury were the proper triers.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2186–2195; Dec. Dig. § 472.*]

**17. APPEAL AND ERROR (§ 742*)—ASSIGNMENT OF ERRORS—RULE OF COURT.**

The appellate court should not be required to look through the record upon every assignment, and will insist that rule 31 (142 S. W. xiii), prescribing the form of statements, be observed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

Appeal from District Court, Swisher County; L. S. Kinder, Judge.

Action by R. A. Bishop and another against the Pecos & Northern Texas Railway Company and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

---

Madden, Trulove & Kimbrough and F. M. Ryburn, all of Amarillo, and Terry, Cavin & Mills, of Galveston, for appellants. Martin & Zimmermann, of Tulia, for appellees.

HUFF, C. J. R. A. Bishop and J. W. Moberly, appellees, brought this suit against the appellants, the Pecos & Northern Texas Railway Company, the Southern Kansas Railway Company of Texas, and the Atchison, Topeka & Santa Fé Railway Company, in the district court of Swisher county, for damages to a shipment of cattle from Tulia, Tex., to Kansas City, Mo. The case was tried before a jury, and resulted in verdict and judgment for appellees against appellants for the sum of $741. The verdict of the jury established the facts that appellees applied to the defendants' station agent at Tulia, Tex., for cars to ship 133 head of cattle from that point to Kansas City. The application was made November 5, 1909, to be furnished at said point November 13, 1909. The agent agreed to furnish cars by that time, and, relying on such promise, appellees brought their cattle in for shipment, but the cars were not then at that place on that day, and appellees held their cattle in and near Tulia waiting for the cars to be furnished until the 4th day of December, 1909; that, by reason of such delay, appellees were compelled to pay for necessary extra feed and to go to extra expense in caring for and holding the cattle while at Tulia, and that they paid out the sum set up by them in their petition, and that the same were reasonable and necessary expenses incurred by reason of the failure to furnish the cars at the time agreed upon and within a reasonable time after placing their order therefor. The agent notified the appellees some time after the 13th of November that the cars for said cattle would be in on the 3d day of December, 1909, and, acting upon such notice, the appellees brought their cattle, and placed them in the pens of appellants at that place on the morning of the 3d of December. The pens at that time were muddy and in bad condition, and the cattle remained in the pens until loaded out some time near 3 or 4 o'clock in the afternoon of December 4th. The delay in loading them was occasioned by the cars not coming in until late at night on the 3d, and the refusal of the servants of appellants to load them earlier. The cattle were in the pens without feed or water from the time they were placed there on the 3d until they were loaded out on the 4th. Appellees did not feed or water them because of the promise that the cars would be in and the continued promises of appellants' servants that the cars would soon arrive. The appellants did not furnish cars in which to ship the cattle within a reasonable time after they were ordered. After the cattle were loaded onto the cars, they were roughly handled in the manner as alleged by plaintiffs in their petition and delayed on their voyage from Tulia to Kansas City an unreasonable length of time. Appellants were negligent in so roughly handling the cattle en route and in the delay in making the voyage. The cattle were damaged by the delay at Tulia and by rough handling and the delay en route, and the expenses for feed and care were reasonably necessary and paid by appellees because of the failure of appellants to furnish the cars when they agreed to do so, and because of their unreasonable delay in furnishing the cars after they were ordered, by all of which acts on the part of appellants and their servants appellees were damaged in the sum found by the jury.

[1] Appellants' first assignment complains of the first paragraph of the court's charge, on the ground that it assumes that 133 head of appellees' cattle were damaged; that expenses were incurred in holding the cattle near Tulia; and that it assumes and presupposes that the damages and expenses occasioned by holding the cattle near the pens at Tulia were attributable to the negligence of the defendants, and that the defendants were liable therefor. The charge so assailed is as follows: "You are instructed that you will find in favor of the defendants and against the plaintiffs as to all damages, if any, and expenses of every kind, if any, accruing to the 170 head of cattle sold by the plaintiffs to C. L. Little, and not allow plaintiffs to recover anything whatsoever as to said 170 head of cattle, and that the following charge is applicable only to the 133 head of cattle, which were shipped by plaintiffs over defendants' line from Tulia to Kansas City, Mo." The appellees object to the consideration of this assignment, for the reason that it is not followed by a sufficient statement showing injury to the rights of appellants occasioned by said paragraph. The statement sets out paragraph 1 and part of the testimony of three witnesses, Lutz, Witcher, and Carter, which go to the delay in getting cars, handling the cattle en route, and the market at destination. There is nothing in the statement showing what cattle are meant by the 170 head sold to Little, for the injury of which the court instructed the jury they could not allow damages against appellants, and there is nothing showing how the charge which was only "applicable to the 133 head of cattle" assumed that appellants were guilty of negligence and liable for damages. We believe appellees' objection to this assignment, as briefed, should be sustained.

[2] If, however, we consider the assignment and statement as presented, we are unable to agree with appellants that the court has assumed such damage as the result of appellants' negligence. He does not even assume that there were expenses incurred in caring for or damage to the 170 head

sold to Little, but instructs the jury, if they should find there was such, they must find for appellants therefor, and must find against appellees for same. The fact that he used the word "and," thereby coupling the clause following referring to the 133 head onto the preceding clause, would not, in our opinion, assume such damage, expense, or negligence, but by the qualification expense, "if any," the damage, "if any," clearly indicates he did not assume such liability. The charge is further qualified by the statement "the following charge is applicable only to the 133 head of cattle." The jury is thereby referred to the "following charge" for the law as applicable to the 133 head. We cannot believe a jury of ordinary intelligence would have understood the court as assuming negligence and consequent damages as to the 133 head of cattle. It appears to us the criticism of this charge is hypercritical in the extreme. The charge complained of directs the jury's attention to the issues to be considered by them, and expressly withdraws from their consideration the question of expenses or damage to the 170 head of cattle, and that they shall consider the issues under the "following charge" as to the 133 head of cattle. Sherman S. & S. Ry. Co. v. Bell, 58 S. W. p. 149; Railway Co. v. Glover, 84 S. W. p. 604.

[3, 4] The second assignment complains that the sixth paragraph of the charge incorrectly defines the measure of damages, in that a recovery is authorized thereby for expenses for feeding and caring for the cattle while waiting for cars, without regard to whether such expenses were reasonable and necessary, and whether such expenses were occasioned by the negligence of defendants, or whether they were occasioned by the plaintiffs in bringing their cattle into the pens before they had reasonable assurance that the cars would be furnished, and because the charge is ambiguous, misleading, and allows a double recovery. The appellants follow this assignment with two propositions: First, that the charge allows a recovery for expenses, whether or not reasonable and necessary; and, second, because a recovery is permitted for expenses while awaiting cars, without regard whether the expenses were occasioned by the negligence of plaintiff in so bringing in said cattle. We think the charge is not subject to the objection that it authorized a double recovery. The charge in that particular is in form much like the charge passed on by the Supreme Court in the case of Railway Co. v. Pratt, 89 Tex. 310, 34 S. W. 445. The question of double recovery, however, is not presented by appellants in a separate proposition from the assignment. The charge complained of as to expenses is to the effect that the jury would add the necessary expenses, if any, appellees were compelled to pay for feeding and caring for the cattle while awaiting cars, etc., "provided the testimony shows, and

in such event only, that said feed bill and expenses, if any, were necessarily incurred by reason of the failure, if any, of defendants to furnish cars for the transportation of said cattle within a reasonable time after the demands therefor, and that such failure, if any, was negligence upon the part of the defendants; and, further, that such amount, if any, so paid was reasonable and customary prices charged for such feed and services at the time same were incurred, and that same were not incurred by reason of the negligence, if any, upon the part of plaintiffs." We do not think, under the charge, the jury were authorized to find against appellants the expenses for feed and care of the cattle, whether or not such expenses were reasonable and necessary. The court expressly told the jury that "you will add such necessary extra expenses, if any, that plaintiffs were compelled to pay for feeding and caring for their cattle while holding their cattle," and in such event only such as "were reasonably incurred by reason of the failure, if any, of defendants to furnish cars. * * * And, further, that such amount, if any so paid, were the reasonable and customary prices charged for such feed and services." The jury, under said charge, could not have found for appellees for such expenses unless they were "necessary extra," and that appellees "were compelled to pay" for same, and that they were reasonable and necessary. We think the charge unnecessarily emphasizes the fact that such expenses must be reasonable and necessary. The second proposition, that this charge permitted a recovery of such expenses without regard to whether they were occasioned by the negligence of the appellees in bringing their cattle to the pens at the time, and under the circumstances, they did bring them, is answered by the charge itself. The court tells the jury they cannot find such expenses, unless they find defendants' failure to furnish cars for the transportation of the cattle in a reasonable time after demand therefor, "and that such failure was negligence upon the part of defendants," "and that same were not incurred by reason of the negligence, if any, upon the part of the plaintiffs." In the second paragraph of the court's charge the court instructed the jury, in order to find for appellees, they must find that if the appellants failed to furnish such cars within a reasonable time, that such failure was negligence on the part of appellant, and again in the fifth paragraph the jury are told that if appellees, in the exercise of ordinary care, could have prevented any of the damages, then they would not take such damages into consideration. The court also defined reasonable and ordinary care, and, at the request of appellees, gave special charges Nos. 3, 4, and 5. These charges instructed the jury not to allow damages if the appellees themselves were guilty of negligence in bringing their cattle to Tulia, and that they could

not recover damages resulting to the cattle by reason of such negligence on the part of appellees. It occurs to us the court was exceedingly cautious to guard appellants' right in this particular in his charge. It was emphasized that appellants must have been guilty of negligence, and that appellees themselves must not have been guilty of negligence in bringing the cattle to the pens before appellees could recover. We do not think appellants show any injury by this charge, and upon viewing the entire charge, together with the special instructions, appellants' rights have been sufficiently guarded in the particulars complained of in the assignment.

[5] The third assignment sets up the refusal of the court to give special charge No. 7, requested by appellants. The charge requested is to the effect that because the evidence fails to show a decline in the market at Kansas City from November 15, 1909, to December 8, 1909, to find for appellants as to any damages claimed for such decline. We cannot say there was no evidence as to the decline of the market as to appellees' cattle between the dates mentioned in the charge. It would appear, so far as we can gather from the record, there was a conflict in the evidence, at least as to some classes of the appellees' cattle. Under the condition of the record, we think the court properly left the question to the jury. The jury were charged, at the request of the appellants, by the eighth special charge, as follows: "In the event you should find for the plaintiff, in any amount, and further find that the market price for any of plaintiffs' cattle at Kansas City, Missouri, advanced from the 15th day of November, 1909, to the 8th day of December, 1909, then you will deduct from any amount so found for the plaintiff such amount that you find that plaintiffs' cattle gained by the advance in the market." The appellants, by this charge, got credit for holding the cattle off the market, it would appear over appellees' protest, until a rise in the market, and thereby got a reduction in the damages for which they would otherwise be liable. Appellants certainly got by this charge all to which they were entitled. By the same rule, if there had been any calves dropped in the interim, appellants would claim credit for them. If there was any error in refusing special charge No. 7, appellants, in requesting and procuring the court to give charge No. 8, invited the court to submit the question as to whether or not there was a decline in the market.

[6] The fourth assignment complains at the action of the court in refusing special charge No. 9, which is to the effect that appellants were only required to furnish cars within a reasonable time after they were ordered and would not be required to furnish them the day for which they were ordered, unless such time was a reasonable time. We think the general charge given by the court submitted the question. In paragraph 2 the jury are told if they found defendants failed to furnish cars on the 13th day of November, 1909, "for the shipment of said cattle, or refused to furnish said cars within a reasonable time after demand for said cars was made," and in the seventh paragraph of the court's charge "what would be an unreasonable delay in furnishing the cars after the demand therefor, and in forwarding and transporting said cattle, or what would be a reasonable time within which to furnish said cars and within which said cattle should have been transported, are purely questions of fact for your exclusive determination from all the facts and circumstances in the evidence before you." At the request of appellants, the court gave charge No. 3, which in part is as follows: "Now, if you believe and find from the evidence that defendants, through their agents, used ordinary care and diligence to procure cars for the shipment of plaintiffs' cattle within a reasonable time after said cars were ordered and used reasonable care in the handling and transportation of plaintiffs' cattle to market, and further find that defendants' agent, A. B. Carter, did not instruct plaintiffs to bring their cattle to Tulia, Tex., before the cars were in fact furnished, then you will return a verdict for defendants." These several charges sufficiently instructed the jury that the appellees could not recover for delay to furnish the cars if they were furnished within a reasonable time after they were ordered. The court was not required to repeat the instruction after giving the one appellants had requested.

[7] The fifth assignment complains at the action of the trial court in not striking out, upon motion, and in permitting the answers to certain interrogatories of J. H. Lutz to be read in evidence, relating to a conversation heard by him between plaintiffs and the employés of the Railway Company, because the answer was an opinion, and the witness did not attempt to give the facts called for. It is not responsive, and the employé is not shown to have had any authority to bind appellants. The witness gave the substance of the conversation, stating he could not give the exact date; that there were several conversations; that he could not give the date of each, as it was then two years since they had occurred. He testified the conversations were between the agent of the Pecos & Northern Texas Railway Company and J. W. Moberly and R. H. Bishop. We think the answer is in direct response to the question. We should disregard this bill of exception because the objection does not point out what part of the answer is not responsive to the question—what part is the opinion of the witness or his conclusion. The questions and answers are both long and include several matters. Some, if not all, were admissible and not amenable to the objections urged.

Railway Co. v. Hall, 31 Tex. Civ. App. 464, 72 S. W. 1052; Railway Co. v. Gallaher, 79 Tex. 685, 15 S. W. 694. The witness testified the conversation was with the agent of the railway, in that he stated a fact, and, if not true, it should have been shown. This witness further testified he could not recall the agent's name, but that he knew him and that he was the agent of the Railway Company; that the agent took him to the Railway Company's office on his arrival at Tulia, where the witness inquired of him relative to the cattle then in the shipping pens, and that he transacted all the business of the Railway Company while the witness was there.

[8] The objection in this case is not that this was not the agent of the company, but is that he is not shown to have had authority to bind the company. It has been held in this state that a railway station agent has power to contract that the company will furnish cars at a named place and date for the transportation of freight, and by such contract the company will be bound. McCarty v. Railway Co., 79 Tex. 33, 15 S. W. 164; Eaton v. Dudley, 78 Tex. 236, 14 S. W. 583.

[9] If the testimony of the witness Lutz was not sufficient to prove the agency, its admission was harmless, for the reason that appellants proved by A. B. Carter that he was the station agent at Tulia, Tex., and that he "remembered the circumstances of Bishop and Moberly and some other parties shipping cattle at that time and their waiting for cars. On the 5th day of November they placed their order for cars for November 13th." "I remember that Mr. Bishop was to see me two or three times every day, and asked me when I was going to get the cars." Railway Co. v. Dolan, 85 S. W. 302.

The sixth assignment is substantially the same as the fifth, and what has been said under that assignment will dispose of the sixth assignment. The only practical difference is that the witness was asked in the interrogatory if he was present at a time when R. A. Bishop talked with the agent. The answer of the witness is: "I was present when R. H. Bishop talked with the agent," etc. The objection is that R. H. Bishop was not a party to the suit. The objection seems to be that the party taking the deposition in writing the middle initial used "H" instead of "A." It is so evidently a clerical error that it does not require discussion.

[10-12] The seventh assignment of error is that the court erred in admitting in evidence, over the defendants' objection, the deposition testimony of the witness J. H. Lutz as to a certain conversation between plaintiff Bishop and the agent of the Railway Company at Tulia, relative to plaintiffs' ordering cars as complained of in bill of exceptions No. 5. The objection to the testimony, as shown by the bill, appears to be because it was a conversation between witness and the agent, and therefore incompetent to bind appellants. The statement shows that the conversation was between the agent and the witness, while the error assigned is in allowing the testimony of the witness as to a conversation between the agent and Bishop, one of the appellees. The proposition and statement do not support the assignment, and are not germane to the assignment. We believe, however, the testimony was admissible, and not hearsay. The fact that appellee did place an order with the station agent at Tulia for the cars on November 5th for November 13th is not a disputed fact, but the agent himself admits it. The controversy appears to be whether the agent agreed to have them there on that date. This witness, Lutz, was interested in the cattle to the extent that part of them at least would be consigned to the firm with which he was associated. The witness arrived in Tulia November 12th, and remained until December 4, 1909, and saw the cattle frequently while at Tulia, and accompanied the shipment from Amarillo to Higgins, saw them again en route at Waynoka, and also saw them upon their arrival at Kansas City. The particular testimony objected to is the statement that upon his arrival at Tulia a number of the cattle were then in the pens, and, upon seeing the cattle in the pens, he inquired of the agent to whom the cattle belonged and when they would be shipped. The agent stated they would be shipped that night if the cars came in, and at that time the agent showed him the record showing that the cars had been ordered by Mr. Bishop for that date. Several days later the witness again saw the agent, who stated there was a car famine, and that he did not know when he would be able to get the cars. The agent testified he did not promise Bishop to get the cars by the 13th or by any certain time, but told Bishop he would get them as quickly as possible, and that he did not tell Bishop to bring in the cattle on the 13th. That the station agent has authority to contract that his company will furnish cars at a named place and date is the recognized law of this state, and, having such authority, his acts and declarations with reference to his agreement to do so is admissible when a controversy arises as to what his agreement in fact was, even though made to an outside party. His declarations should be treated like any other person who has authority to contract. This testimony objected to was directly addressed to the controverted issue, and was admissible as testimony to show what the agreement was with reference to furnishing cars on that date. The real complaint of appellants appears to be that because Lutz did not recall the name of the agent at Tulia, therefore he could not have known him to be the agent, and hence the party he heard talking to Bishop and with whom he talked was not shown to be the representative of

the appellants in this transaction. Lutz was in Tulia from the 12th of November until December 4, 1909, saw the agent performing the duties as agent, was present when the agent and Bishop discussed the question of the cars, was himself interested in getting the cars for these cattle as some of them were to be consigned to his company. The agent himself admits Bishop was in to see him two or three times a day during that period of time. As said in the case of McGraw v. O'Neil, 123 Mo. App. 691, 101 S. W. 132, cited by appellants: "We may concede that, as it appeared the witness had spent several days on the ranch under circumstances affording him full means and knowledge of the situation there, he was in a position to know who was in charge of the cattle, and, had that fact been a subject of controversy between the parties, the question would have been proper, since it called for a statement of a fact which, though partly the result of conclusion, necessarily could and would be inferred by any reasonable mind from the facts and circumstances in the knowledge of the witnesses." The statement that he talked to the agent at Tulia is a fact that may partly be a conclusion, but there is not a suggestion in the record that his statement is not true as to such person being the agent. The court did not err in admitting the testimony.

[13, 14] The eighth assignment is that the court erred in admitting in evidence the following statement of J. H. Lutz: "As a matter of fact I accompanied this shipment of cattle from Amarillo to Higgins, Tex., and on this trip, with just one exception, I never saw a train handled so roughly and so much jerking." The objection is that the answer is not responsive to the question, and stated an opinion and conclusion of the witness. Appellants drew out this question by a cross-interrogatory to Lutz, which is as follows: "Is it not a fact that these cattle were handled through to market with reasonable care and there was no unusual jerking or rough handling of the train, so far as you remember?" The answer above given was clearly responsive to the question. He was asked if there was any "unusual jerking." He responded that, with one exception, he never saw a train handled so roughly. We do not think because he stated it was roughly handled and jerked expresses an opinion alone, but he states it as a fact. McCabe v. San Antonio Traction Co., 39 Tex. Civ. App. 614, 88 S. W. 387; Cooper v. State, 23 Tex. 331; Railway Co. v. Anchonda, 33 Tex. Civ. App. 24, 75 S. W. 557.

[15] By the ninth assignment appellants complain at the action of the court in permitting the witness, Clyde Witcher, to answer the following question: "State how much in your opinion the cattle shrank in weight from the time you first saw them in Tulia awaiting cars for shipment until the time they reached Kansas City. I think they shrank about 50 pounds per head. About 50 pounds." The objection urged was that he was not qualified to give the testimony. The statement of appellants does not include all the evidence of the witness upon his qualification. It appears his deposition was taken twice and both were offered in evidence. After stating his knowledge of these particular cattle, which he accompanied to Kansas City, he states he saw them at Tulia before they were shipped and while awaiting the cars. He also stated he had about 16 years' experience in handling cattle and dealing with cattle; that he bought, sold, shipped, fed, and grazed cattle during most of that time; that he handled cattle from one car load to as high as 2,000 head in a year, had experience with most every class of cattle, and in most every way, except breeding and raising them. He stated from his experience as a cattleman he could tell about what the shrinkage would be per head in transit and while being held awaiting cars. We do not think the court erred in admitting the testimony. Railway Co. v. Greathouse, 82 Tex. 104, 17 S. W. 834.

[16] The tenth assignment alleges error on the part of the trial court in excluding the answers of Clyde Witcher to the following cross-interrogatory: "Is it not a fact that these cattle were handled through to market with reasonable care, and that there was no unusual jerking or rough handling of the train so far as you remember?" To which he answered: "Well, I think they were handled with care." The objection urged to the question and answer was: "The same states an opinion and conclusion of the witness upon a mixed question of law and fact, upon which he was not qualified, and because it was the province of the jury to determine from the evidence what would constitute reasonable care." We think the court properly sustained the objection. Whether or not the cattle were handled with care while in appellants' hands was the issue to be determined from all the facts in the case, and was one of law and fact which it was the province of the jury to determine under the law given them in charge by the court. What would be a "reasonable time" has been held inadmissible as testimony. Railway Co. v. Evans, 42 Tex. Civ. App. 60, 93 S. W. 1024. It is held the witness could not state the pens for shipping cattle are insufficient. Railway Company v. Slator, 102 S. W. 156. And to the same effect are the following cases: Railway Co. v. Roberts, 101 Tex. 418, 108 S. W. 808; Railway Co. v. Kimble, 49 Tex. Civ. App. 622, 109 S. W. 234; Schmick v. Noel, 72 Tex. 1, 8 S. W. 83.

In this case we have found many of the statements under the assignments and propositions, not faithfully made, with reference to the record on the matter assigned as error. In some instances we felt that we

should disregard the assignment of error ·because of such failure. It is the purpose to have each assignment viewed in the light of the record and the conditions surrounding the trial court at the time he made the rulings of which complaint is made. ·

[17] The appellate court should not be required to look through the record upon every assignment. We must insist, as was said by this court, speaking through Judge Hendricks, in the case of Pecos & Northern Texas Railway Co. et al. v. Dinwiddie et al., (not for publication), this day handed down, that rule 31 (142 S. W. xiii) be observed, and we also refer to the case of K. C., M. & O. Ry. Co. v. Whittington, 153 S. W. 689, Judge Hall rendering the opinion, in which the authorities on this rule have been collated and applied.

Upon a careful examination of the record we find no such error in the case as requires a reversal at our hands, and we therefore in all things affirm the judgment of the court below.