Gulf, Colorado & Santa Fe Railway Company et al v. James Cushney.

No. 1078.   Decided March 17, 1902.

Carriers of Animals—Connecting Lines—Damages—Charge.

In an action against several connecting carriers for damages in the transportation of cattle, it was not erroneous to instruct the jury to determine the aggregate damage caused by wrongful delays between the points of origin and destination of the shipment, and apportion against each defendant the amount caused by his individual default, the jury being fully instructed that each was only liable for delays on its own line. (Pp. 311-313.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Mitchell County.

The defendant railway companies appealed from a judgment rendered in plaintiff Cushney's favor, and on affirmance obtained writ of error.

*J. W. Terry* and *Chas. K. Lee,* for plaintiffs in error, Gulf, etc., Railway Company and Atchison, etc., Railway Company.

*B. G. Bidwell,* for plaintiff in error, Texas & Pacific Railway Company.

*Cowen & Burney,* for defendant in error.

WILLIAMS, Associate Justice.—Five actions were brought by defendant in error, in each of which the Texas & Pacific Railway Company, the Gulf, Colorado & Santa Fe Railway Company, and the Atchison, Topeka & Santa Fe Railway Company were joined as defendants, as permitted by an act of the Legislature of 1899 (Session Laws 1899, page 214), the object of the suits being to recover for damage sustained by plaintiff's cattle, shipped in five train loads over the three roads from

Odessa, Texas, on the first named, to Diamond Springs and Burdick, Kan., on the last named. In three of the suits, more than two thousand dollars damages in the aggregate were alleged to have been caused by the three companies, but less than two thousand dollars were alleged and claimed against each of the defendants, no joint liability being asserted. In each of the other two cases, the whole amount sued for was less than two thousand dollars.

The Texas & Pacific company, in proper time and manner, applied for a removal of the three first mentioned causes to the Federal Court, which was denied in the District Court. Thereafter, the five causes were consolidated by an agreement which purports to save the rights arising from the application for removal; and, in the consolidated cause, amended pleadings were filed by both parties, plaintiff seeking the recovery of the entire damages sued for in the original suits and defendants making their several defenses thereto. More than two thousand dollars were thus claimed of the Texas & Pacific company, but no further effort at removal was made after consolidation.

The plaintiff recovered judgment against the defendants severally for amounts found against them by the jury, and this judgment was affirmed in the Court of Civil Appeals.

This writ of error was granted upon what this court at the time was inclined to consider an error in the charge of the trial court. All other points raised by the assignments of the three appellants were, in our opinion, properly disposed of by the Court of Civil Appeals.

The Texas & Pacific company received the cattle at Odessa, carried them to Fort Worth, and delivered them to the Gulf, Colorado & Santa Fe company, which took them to Purcell, in the Indian Territory, and delivered them to the Atchison, Topeka & Santa Fe company, which carried them to their destinations. The amended petition, filed after the consolidation, alleged and specified delays and slow running on the part of each carrier in the transportation of each of the five trains, and averred damage to the cattle from each of such causes which amounted, in the aggregate, to the sum sued for; but the petition further stated that plaintiff could not state accurately the amount of such damage inflicted by each company, but that none of them caused or were sought to be held liable for damage in excess of two thousand dollars to any train load of cattle.

In its charge to the jury the trial court defined, distinctly and separately, the duty of each carrier in receiving and carrying the stock over its own road; instructed that each would be liable for damage caused by its neglect in performing such duty; and that neither would be liable for a failure of duty of another, but only for damages resulting from its own negligence. After further definitions, the court instructed as follows: "If you believe from the evidence before you that on or about May 5, 1898, at Odessa, Texas, plaintiff tendered to the Texas & Pacific Railway Company the cattle described in his petition for shipment, and if you believe that said railway company was guilty of an unreasonable

and negligent delay in receiving and accepting said cattle when so tendered to it, and if you believe that in the transportation of said cattle from Odessa to their destination in Kansas, there were unreasonable delays at or between the various points named in plaintiff's petition or any of them, and if you further believe that such delays were the result of the negligence of defendants or any or either of them, and if you find that as a result of such unreasonable delays, if any, said cattle were injured and as a result of such injuries any of said cattle died or were killed, then you will find for the plaintiff the damages he sustained thereby, and in estimating the amount of his damages, you will fix the same at the market value at the place of destination of the cattle, if any, that died or were killed as a result of such negligent and unreasonable delays, to which you will add the difference, if any, in the market value at destination at time of arrival of all the cattle that survived and their market value at said place in the condition and at the time they should have arrived there but for such unreasonable delays, if any. And to the aggregate amount of damage so found by you, if any, you will add interest at the rate of 6 per cent per annum from the time of the arrival of said cattle at destination to the date of your verdict.

"If you find for plaintiff, you will apportion the amount of the damage found by you, if any, between the defendants according to and in proportion to their respective liability as indicated by instructions which have already been given you. And you will apportion the damages so found by you against those defendants only, if any, that you may find from the evidence were guilty of unreasonable delays in receiving and transporting said cattle and in thus contributing to their injury, you will find in favor of such defendants, if any, as you may find from the evidence did not contribute to the injury of said cattle by unreasonable delays in accepting said cattle and in transporting them over its own line of railway."

After further directions on other questions, the court gave this instruction: "You are further instructed that if you find for plaintiff you will not, in apportioning the damages so found by you, apportion any damage against either of the defendants resulting to plaintiff from delays, if any, occurring beyond the terminus of its own line of railway, for under the law each is only liable for negligent and unreasonable delays occurring on its own line of railway and not for any delays of the other defendants ocurring on their lines of railway."

The part of the charge of which complaint is made is that which in effect directs the jury to first find the whole amount of the damage done by all the defendants and then "apportion" it among them "according to and in proportion to their respective liability as indicated by instructions which have already been given." The objection, in substance, is that by requiring the finding and apportionment of an aggregate for which all of the defendants were not responsible, the court authorized the jury to fix the liability of each according to an arbitrary rule, rather than to determine the several liabilities from the evidence.

The trial judge probably took the word "apportion" from the Act of 1899 before referred to, and there is a contention between the parties as to whether or not that statute attempted to make any new rule of right or of procedure in the trial of such cases, or merely meant, when authorizing the joinder of the several carriers and fixing the venue of such actions, to require the assessment of damages for which each defendant should be found, under existing rules of law and of evidence, to be liable.

We may pass upon the objection to the charge without considering this contention, just as if there were no such statute.

As far as the charge directs the jury to find the whole damage inflicted in the entire trip, it only instructs them to do what would necessarily have to be done in order to dispose of the case. The process, or course of investigation, or calculation through which the jury were to ascertain this, is left to them. They could consistently with the charge have obtained the whole amount of damage by first ascertaining and then adding together the parts caused by each carrier, or have first found the total and then divided it among the several carriers according to their several liabilities as shown by the evidence. By either method, the same thing would have to be done; that is, to find from the evidence the amount of the damage caused by each defendant. The charge does not authorize the jury to base their findings upon anything but the evidence. If the use of the words "apportion" and "proportion" would be calculated, in the absence of anything else in the charge, to lead the jury to believe that they were not required to find as facts the damage chargeable against the defendants severally, such an understanding of the instruction was clearly repelled by the careful, distinct, and repeated directions that the jury would "apportion" against each defendant only the damage it had caused, and that "in apportioning damages, they should not" apportion against one damages caused by another. If there is here a misuse of words, the sense in which they were employed is evident to any ordinary mind, and is the same as if the words usually found in such connections, "assess" or "find" has been used.

And, at last, the charge only directs the jury to do that which is ordinarily done in cases where damages to goods which have passed through the hands of several carriers in transportation are to be ascertained. "When it is made to appear that freight transported by successive carriers has been damaged subsequent to its shipment and the evidence fails to show on what particular line the injury occurred, there exists a presumption that it was through the fault of the last carrier." Railway v. Adams, 78 Texas, 373, citing Schoul. on Bailm. and Carr., 526.

In Gulf, Colorado & Santa Fe Railway Company v. Edloff, 89 Texas, 458, it was held that where the evidence shows that part of the injury occurred on the line of the last carrier, it does not acquit itself of liability for the whole by simply showing that part of it also occurred on

the line of a preceding carrier, but must show how much of it so occurred. In applying this rule in such cases, the plaintiff proves the whole amount of damage which his property, when he received it from the last carrier, had suffered in transportation, and the latter must then, in order to escape liability, show that such damage, or a part, and what part, of it had been inflicted before it received the freight. If it succeeds in doing this, the burden is then thrown on the next preceding carrier to acquit itself in the same way. In such an investigation, the jury starts out with an aggregate damage and ascertains the liabilities of the several carriers from the evidence adduced. The court, in this case, directed them to do no more than this. While the presumption against the last carrier could not perhaps have arisen in favor of plaintiff, in view of his pleadings, it was admissible for him to prove his total damage and have the jury, from the evidence, determine the part of it caused by each defendant.

There being nothing in the court's charge to mislead the jury from their duty to base every finding which they were required to make upon the evidence, if a more specific instruction to confine their attention to the evidence was desired, it should have been requested.

*Affirmed.*