Texas & Pacific Railway Company et al. v. Q. D. Hall.

Decided February 21, 1903.

**1.—Carriers of Freight—Live Stock Shipment—Connecting Lines—Measure of Damages.**

Where plaintiff sued two connecting railways for damages from delay, etc., in the transportation of cattle, and the charge limited the liability of each to negligence occurring on its own line, without reference to a third road not sued, on whose line part of the delay occurred, it was not on that account erroneous as to the measure of damages as permitting the jury to assess damages against the two companies sued that in fact occurred on all three of the lines.

**2.—Same—Harmless Error.**

The evidence showing that the delay on such third line could not have injured the cattle or affected their market price, the charge as given could not have been prejudicial to defendants.

**3.—Same—Charge—Undue Prominence.**

The court having charged that each defendant could be held liable only for its own negligence, a reference in the charge to the fact, pleaded by plaintiff, that the train broke in two on one of the lines and ran together, injuring the cattle, was not error as giving undue prominence to such fact and tending to minimize the injuries on the other line.

**4.—Same—Joint Contract—Common Law Liability.**

Where the suit was against connecting carriers for injuries to cattle occurring on a through shipment, and plaintiff in his evidence expressly repudiated any averment in his petition declaring upon a joint contract for the delivery of the cattle at destination, and no such issue was submitted to the jury, but only those arising from defendants' common law liability, the court properly refused a peremptory instruction to find for one of the defendants based on the ground that plaintiff had declared upon a joint contract which was not proved.

**5.—Same—Issue for Jury—Conflicting Evidence.**

Although plaintiff, who was unacquainted with the distance, testified that the connecting carrier could not have delivered the cattle at the time agreed, having received them from the other line so late, yet as one of defendants' witnesses testified to facts tending to show that this could have been done, the issue so raised was one for the jury.

**6.—Evidence—Market Value—Objection.**

Where an objection to the evidence of a witness as to a fall in the market price went to the whole of such evidence, and at least a part of it was admissible, there was no error in overruling the objection.

Appeal from the District Court of Mitchell. Tried below before Hon. W. R. Smith.

*B. G. Bidwell,* for appellant Texas & Pacific Railway Company.

*Henry & Henry,* for appellant Iron Mountain Railway Company.

*Shepherd & Crockett,* for appellee.

CONNER, Chief Justice.—Q. D. Hall instituted this suit in the District Court of Mitchell County, Texas, against the Texas & Pacific Railway Company and the St. Louis, Iron Mountain & Southern Railway Company, to recover damage and injury to a shipment of live stock.

The petition is voluminous, but we think that the following briefly but sufficiently states the substance of it: That the defendants operated a through line of railway as connecting lines from Iatan, Texas, to the National Stock Yards at East St. Louis, Ill.; the Texas & Pacific Railway Company operating that part of the through line extending from Iatan, Texas, to Texarkana, Texas, and the St. Louis, Iron Mountain & Southern Railway Company operating that part of the through line from Texarkana, Texas, to the said National Stock Yards. That plaintiff had, on the 10th day of November, 1900, 269 head of steers at Iatan, Texas, ready for shipment, and the defendants were notified by plaintiff that he intended them for the market of November 13, 1900, at the National Stock Yards. That said defendants were promising speedy transportation. That the cattle left Iatan on November 10, 1900, at 7 p. m.; were unloaded too soon at Fort Worth at 12:30 p. m., November 11th, and delayed at many places along the route between Iatan and East St. Louis, which delays were specifically named, and finally arrived at the National Stock Yards and were unloaded at 7 a. m., November 14th, about twenty-four hours late. That the steers were roughly and improperly handled by the defendants. That they were kept on the cars without rest, food or water, for sixty hours between Fort Worth and their destination. That as a result of the delay, rough treatment of defendants, and the loss of the favorable market of November 13th, plaintiff's loss in the sale of his steers amounted to the aggregate sum sued for, which he asked to be apportioned between the defendants, and that he have judgment against them for the several amounts apportioned against them respectively, together with interest and costs.

Both defendants answered by general denial, each making a sworn denial of partnership, and further pleading various provisions of the shipping contract limiting their liability as it existed at common law, and restricting the obligation and undertaking of each defendant to its own line.

The court, upon the jury's verdict, entered judgment in favor of plaintiff against the Texas & Pacific Railway Company for $253.06, and against the St. Louis, Iron Mountain & Southern Railway Company for $506.02, both amounts bearing interest from November 14, 1900, from which judgment both railway companies named have appealed to this court.

Here referring to the facts in a general way it may be stated that the evidence supports the allegations of appellee's petition as above outlined, and it further appears that upon the termination of the shipment by the St. Louis Iron Mountain & Southern Railway Company at East St. Louis, the cattle were by said company delivered to what is designated as the Terminal Railway Company about 1 a. m. of November 14th, and the latter company transported said cattle to the National Stock Yards, a distance of some twelve miles, and there unloaded and delivered the cattle at 7 a. m. of the same morning as alleged. Inas-

much as it thus appears that there was some five or six hours delay in the shipment on the part of a railway company not a party to the suit, it is insisted in the first and second assignments that the court was in error in charging the jury that in event they found the facts of negligence and injury as alleged, they would then find for plaintiff, and "assess his damage at the market value of all cattle so killed (if any) at that point of destination at the time they should have arrived there, to which you will add the difference, if any, in the market value of all said cattle that may have been so injured, if any, at National Stock Yards, Illinois, at the time of their arrival in the condition they were then in, and their market value at said place in the condition they should have been in at the time they should have arrived there." It is urged that this was prejudicial in that the jury were thereby permitted to assess damages against the two railway companies sued that in fact occurred on all three lines of railway.

The entire paragraph of the charge from which the above quotation is made was substantially in the form approved in Railway Co. v. Cushney, 95 Texas, 309, 64 S. W. Rep., 795, and we think, when considered together with other parts of the charge, could not have been prejudicial in the particular above stated.

The court in another paragraph plainly and explicitly limited the liability of each of the railway companies sued to its own negligence and injuries and damages proximately resulting therefrom. Besides, we fail to find any evidence of negligence on the part of the Terminal Railway Company or of any injury done appellee's cattle while in its possession. The delay, or apparent delay, after receipt of the cattle on the part of the Terminal Railway Company is not explained. It may or may not have been the result of negligence, but if so, the charge as a whole evidently excluded the appellants from liability therefor, while it is quite clear that the delay did not and could not have resulted in the loss of an earlier market, so that the first and second assignments will be overruled.

It is also insisted that the charge gave undue prominence to the fact established by the testimony, that the train broke in two and run together to the injury of plaintiff's cattle while on the line of the St. Louis, Iron Mountain & Southern Railway Company. We fail to see how this charge operated to the prejudice of said company. This circumstance was particularly pleaded, and seems to be uncontroverted in the proof. If, as insisted, it tended to minimize the rough handling and injuries on the line of the Texas & Pacific Railway Company, it was immaterial, because of the court's explicit direction that each company could be held liable for the proximate results of its own negligence alone. The third assignment will therefore be overruled, and what we have stated in relation thereto we think likewise applicable to the fourth assignment, which will also be overruled.

The fifth and sixth assignments relate to the refusal of the court to give peremptory instructions to find for the St. Louis, Iron Mountain

& Southern Railway Company. This contention is based upon the proposition that plaintiff had declared upon a joint contract for the delivery of the cattle within time for the market of November 13th. We think it sufficient answer to this contention to say that if the pleading is to be so construed, such averment was expressly repudiated by the appellee while testifying as a witness, and no such issue was submitted to the jury, the court submitting the issue made by pleading and evidence of common law liability alone.

We think the special charges requested, and to the refusal of which complaint is made in the seventh and eighth assignments, were sufficiently presented in the court's main charge. And while plaintiff testified that it would have been impossible for the St. Louis, Iron Mountain & Southern Railway Company to have delivered his cattle in time for the market of November 13th, after they were received from the Texas & Pacific Railway Company, we nevertheless think that the court properly declined to peremptorily instruct the jury that they could not consider decline in market as an element of damage against this railway company, from the fact that it further appeared that the appellee was unacquainted with the distance between Texarkana and St. Louis, and one of appellant's witnesses testified that the schedule time of fast stock trains was twenty-five miles per hour, and that the distance between the two points named was 490 miles, thus tending to authorize the inference that there was time from 10 o'clock a. m. November 12th, when the cattle were received and started on their journey by the St. Louis, Iron Mountain & Southern Railway Company, to have arrived in St. Louis in time for the market of November 13th. The court therefore properly submitted the issue raised by the conflicting tendency of the evidence as a whole to the jury.

We also fail to find error, as presented, in the action of the court in permitting the witness Sherwin to testify in regard to the fall in the market from November 13th to November 14th, based upon knowledge acquired from stock journals, bulletin boards and commission men. The objection went to the whole, and at least part of the evidence objected to was admissible. See International & G. N. Railway Co. v. Dimmit County Pasture Co., 5 Texas Civ. App., 189; Texas & P. Railway Co. v. Donovan, 86 Texas, 378.

The foregoing conclusions dispose of all assignments of error save the tenth (which requires no notice), presented by the St. Louis, Iron Mountain & Southern Railway Company. The assignments presented by the appellant the Texas & Pacific Railway Company, have been carefully examined, but we find no substantial merit therein. The evidence sufficiently supports the verdict against it, and we fail to find prejudicial conflict, if any, in charges given by the court as urged in the second assignment of error.

Believing that the evidence supports the verdict and judgment, and reversible error not having been exhibited, the judgment will be affirmed.

*Affirmed.*

Writ of error refused.