**DAVIS, Agent, v. HILL et al. (No. 431.)***

(Court of Civil Appeals of Texas. Waco. Jan. 13, 1927. Rehearing Denied Feb. 24, 1927.)

**1. Trial ⚑205—Charge on burden of proof is not necessary or proper in every case.**

Charge on burden of proof is not necessary or proper in every case; propriety of such charge depending on state of evidence.

**2. Appeal and error ⚑216(1)—Where charge given was correct, failure to charge on burden of proof could not be complained of, where such charge was not requested.**

Where charge given was correct as far as it went, defendant could not complain of failure to charge on burden of proof, where such special charge was not requested.

**3. Witnesses ⚑393(1)—Admitting court reporter's testimony regarding witness' statement in previous trial for purpose of impeaching witness held not error.**

Where witness testified to material fact which she stated she had testified to in previous trials, admitting testimony of official court reporter that witness had not testified to such material fact on previous trials for purpose of impeaching witness *held* not error, where court instructed jury at time that testimony was admitted for impeachment purposes only.

**4. Trial ⚑352(4)—Where special issue was submitted in substantially same language as pleading, there was no error.**

Where pleading alleged starting of cars "without giving any signal or alarm with bell or whistle moving same," and court submitted to jury to find if defendant's agents did "suddenly start and move said string of cars, etc., without giving any alarm or notice of moving of cars," there was no error, since gist of negligence complained of was moving of cars without notice or warning, and manner of giving such was of minor importance.

**5. Death ⚑104(4)—Charge that jury could not consider "mental distress" as element of damages for death held not error.**

In action for death, charge that jury could not take into consideration any mental distress instead of charge that they could not take into consideration elements of sorrow and grief *held* not error, since "mental distress" includes "sorrow and grief."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Mental Agony or Anguish.]

**6. Trial ⚑96—Motion to strike out all of evidence, based partly on hearsay and partly on personal knowledge, was properly overruled.**

Where plaintiff's testimony regarding her deceased husband's earning power was based partly on personal knowledge and partly on hearsay, motion to strike out all of it was properly overruled.

**7. Death ⚑67—In determining earning capacity of deceased, age, physical condition, training, habits, and wages may be considered.**

In determining value of life of husband or father to wife or children, important element to be considered is, not amount of money he is making at time of death, but his earning capacity, and, in determining earning capacity, it is proper to consider age, physical condition, training, habits of industry, wages he is receiving, if employed, etc.

**8. New trial ⚑143(2)—When misconduct of jury was set up as ground for new trial, refusal to permit juror to answer question not confined to particular misconduct alleged held not error.**

Where defendant set up misconduct of jury as ground for new trial to effect that jury had agreed to award damages, and then proceeded to answer question so as to effectuate that purpose, refusal to permit juror to answer question not confined to that particular misconduct *held* not error.

**9. Trial ⚑121(2)—Counsel could state his inference or conclusion from facts in evidence in reference to evidence of witness.**

Where counsel, in argument, did not undertake to state any fact not in evidence, it was permissible and proper for him to state his inference and conclusion from facts in evidence in reference to evidence of witness.

**10. Trial ⚑121(4)—Counsel had right to make fair criticism of witness' testimony when same was justified by record.**

Where defendant's employé did not appear as witness until case had been tried four times, and testified at one previous trial, but was not present at instant trial, and his deposition was used, plaintiff's counsel had right to make fair criticism of him as a witness and his testimony.

**11. Trial ⚑129—Party cannot complain of objectionable language in reply to argument not called for by facts.**

Counsel, pursuing line of argument not called for by facts, invites reply, and party so represented cannot complain of objectionable language in reply.

**12. Trial ⚑129—Argument regarding plaintiff's financial inability to produce witnesses, compared with defendant's financial ability, held not prejudicial misconduct, where not calculated to inflame minds of jury, and where invited by opposing counsel's argument.**

In action against railroad company for death of plaintiff's husband, argument regarding plaintiff's financial inability to produce witnesses, while defendant was able to bring witnesses "by the clouds," *held* not prejudicial misconduct, where not calculated to inflame minds of jury, and where in part invited by argument of defendant's counsel, and where court promptly sustained objection, and instructed jury not to consider same.

**13. Railroads ⚑350(1)—Liability of railroad company for death of pedestrain held for jury.**

In action against railroad company for death, in which question was whether deceased

pedestrian was hit by train at crossing or injured while under box car, liability of defendant for death held for jury.

**14. Railroads ⬤═➤348(4)—Evidence held to support finding of railroad's negligence in moving cars without warning pedestrian.**

Evidence held to support findings that pedestrian's death at railroad crossing was caused by railroad company's employés' negligence in suddenly starting and moving string of cars over public crossing without giving any alarm or notice of moving of such cars.

Barcus, J., dissenting.

Appeal from District Court, McLennan County; Sam R. Scott, Judge.

Action by Mrs. Alda Hill and others originally instituted against Walker D. Hines, then Director General of Railroads, for whom one Payne, Agent, was substituted, and James C. Davis, Agent, was substituted for Payne. From a judgment for plaintiffs, defendant appeals. Affirmed.

Terry, Cavin & Mills, of Galveston, and Nat Harris, of Waco, for appellant.

Tom M. Hamilton and J. A. Kibler, both of Waco, for appellees.

STANFORD, J. This suit was instituted August 20, 1919, by appellee Alda Hill against Walker D. Hines, then Director General of Railroads, and the Gulf, Colorado & Santa Fé Railway Company, for the recovery of damages resulting from the alleged negligence of the Director General while engaged in operating the Gulf, Colorado & Santa Fé Railway Company, in causing the death of her husband, G. E. Hill. Appellee later filed her amended petition, in which she prosecuted the suit for herself and for the use and benefit of J. D. Hill and M. E. Hill, father and mother of G. E. Hill, deceased. In the meantime, Payne, Agent, was substituted in lieu of Walker D. Hines, and the Gulf, Colorado & Santa Fé Railway Company was dismissed from the case. The first three trials resulted in hung juries. The fourth trial resulted in a judgment for Alda Hill for $12,500 and $500 in favor of the father and mother. Appeal was taken to the Court of Civil Appeals, Third District, and said cause reversed and remanded for another trial. Payne v. Hill (Tex. Civ. App.) 242 S. W. 302. James C. Davis, Agent, was substituted for Payne. When the case was again called for trial, a plea in abatement was sustained, from which action of the trial court the case was again appealed, and reversed and remanded. Hill v. Davis (Tex. Civ. App.) 257 S. W. 340. Upon another trial, judgment was rendered in favor of appellee Alda Hill for $6,500, but against the father and mother, J. D. Hill and M. E. Hill, denying to them any recovery. The case was again appealed, and the judgment,

as between appellant and appellee, was again reversed and remanded for another trial, but the said judgment as between the appellant and J. D. Hill and M. E. Hill, they not having appealed, was affirmed. Davis v. Alda Hill et al. (Tex. Civ. App.) 272 S. W. 291. Upon the last trial, in response to special issues, the jury found as follows:

"(1) The deceased, G. E. Hill, was injured by being struck by one of defendant's cars at the place where Schaffer street intersects defendant's railway tracks.

"(2) That the agents, servants, and employés of the defendant did suddenly start and move a string of cars over the public crossing at Schaffer street against the deceased, G. E. Hill, on the occasion in question, without giving any alarm or notice of the moving of said cars.

"(3) That such acts and omissions were negligence, as that term has been herein defined, on the part of the agents, servants, and employés of the defendant.

"(4) That such negligence was the proximate cause of the injuries and death of the plaintiff's husband, G. E. Hill.

"(5) That, at the time plaintiff's husband was injured, he was not a trespasser down in the yards of the defendant, among its tracks and away from any public thoroughfare, street, or passageway.

"(6) That at the time plaintiff's husband was injured he was not lying down under one of the defendant's cars among its tracks and trains, away from a public thoroughfare, street, or passageway over its tracks.

"(7) If paid now, the reasonable amount necessary to compensate plaintiff for the pecuniary loss she has sustained by reason of the death of her husband is $8,000."

Upon such findings of the jury, the trial court entered judgment for appellee for $8,000.

Under appellant's fourth assignment, the contention is made that the court erred in failing to charge on the burden of proof; appellant having objected to said charge on said ground, and the evidence of negligence being slight. That G. E. Hill was run over and killed by a string of freight cars being operated by appellant is not denied. There were two theories as to how the injury occurred; appellee contending that there was a string of cars with the end of said cars extending up to the sidewalk, if there had been one, along the south line of Schaffer street, a public thoroughfare running east and west across appellant's tracks, and that, while the deceased was walking along the south line of Schaffer street crossing said tracks, and while near the end of said cars, appellant's employés, without giving any signal or alarm, struck the south end of said string of cars, and shoved them against deceased, knocking him down, running over him, and inflicting the injuries resulting in his death. Appellant contends the injury was not inflicted at or near the Schaffer street crossing, but that the deceased had gone down south of Schaf-

fer street some 540 feet in appellant's south yards, among the tracks, trains, and cars standing on said tracks, and away from any public street or passageway over said tracks, and had lain down under one of the box cars standing on one of the tracks and gone to sleep, and that deceased was guilty of negligence in so doing and that but for such negligence the deceased would not have been injured. The witness King, as disclosed by the record, was the only witness who claimed to have seen the accident, and it was on his evidence, corroborated by some circumstances, that appellee based her right to a recovery. Appellant made a very strenuous effort in various ways to discredit the witness King and to show that his evidence was false. The jury answered the first four special issues in the affirmative, which were findings that the injury occurred at the Schaffer street crossing, as testified by witness King. These findings necessarily negatived appellant's theory, involved in the fifth and sixth special issues, that the deceased's injury resulted from his own negligence; and likewise an affirmative finding to the fifth and sixth issues would have necessarily negatived appellee's theory, involved in the first four special issues. However, the jury found, not only that the injury occurred as contended by appellee and as testified by King, but also that it did not occur as contended by appellant.

[1, 2] The case being submitted on special issues and the controlling issue in the case dependent upon whether or not the jury believed the evidence of King, the important question was the credibility of said witness, for, if they believed his evidence, the burden of proof was necessarily sustained by appellee, and, if not, the findings would necessarily have been for appellant. There was no more reason to charge on the burden of proof in respect to the issues submitting appellee's theory of the case than there was in submitting appellant's theory. A charge on the burden of proof is not necessary or proper in every case. The propriety of such charge depends on the state of the evidence. Stooksbury v. Swan, 85 Tex. 563, 22 S..W. 963; T. & N. O. R. Co. v. Syfan (Tex. Civ. App.) 43 S. W. 551; Chittim et al. v. Martinez, 94 Tex. 141, 58 S. W. 948; St. Louis S. W. Ry. v. Preston (Tex. Com. App.) 228 S. W. 928. Under the condition of the evidence in this case and the manner of the submission, we do not think a charge upon the burden of proof was necessary, but, if a charge on the burden of proof was proper, as no charge on the subject was requested by appellant, he cannot be heard to complain. If the charge as prepared by the court had been affirmatively erroneous, and appellant by objections had pointed out such affirmative errors, this would have been sufficient to raise the question and require this court to consider such affirmative error, but, where the charge is correct as far as it goes, as in this case, but

fails to charge on a certain phase of the case, or to submit an issue made by the evidence, it is necessary, in order to raise such question, that a special charge be requested covering the phase of the case omitted or the special issue which the court failed to submit. Gulf, C. & S. F. R. Co. v. Conley et ux., 113 Tex. 472, 260 S. W 561, 32 A. L. R. 1183; Texarkana & Ft. Smith R. Co. v. Smith (Tex. Civ. App.) 270 S. W. 871; Modern Woodmen v. Yanowsky (Tex. Civ. App.) 187 S. W. 728; Kansas City, M. & O. R. v Russell (Tex. Civ. App.) 184 S. W. 299; Dancey v. Peyton et al. (Tex. Civ. App.) 282 S. W. 819; St. Louis S. W. R. Co. v. Preston, supra; El Paso Printing Co. v. Glick (Tex. Com. App.) 263 S. W. 260. There is no error shown here— at most, no reversible error. This assignment is overruled.

[3] Under appellant's ninth assignment, the contention is made that the court erred in admitting, over appellant's objection, the testimony of J. L. McAtee for the purpose of impeaching the witness Mrs. Ferguson. The record discloses the witness Mrs. Ferguson testified on the several previous trials of the case, and on the trial before the last testified to a material fact which appellee contended she had never testified to before, and, to lay a predicate for impeachment, appellee's counsel asked her if it was not a fact she had not testified to such fact in any of the former trials, and the witness affirmed she had testified to said fact on each of the former trials. After J. L. McAtee, the official court reporter who reported all of the former trials, had refreshed his memory from his shorthand notes of all the former trials, he was permitted, over appellant's objection, to testify that this witness on none of the other trials had testified to said material fact. The court instructed the jury at the time said testimony was admitted that it was admitted for impeachment purposes only. There was no error in admitting this evidence. This assignment is overruled.

[4] Under appellant's second assignment he claims error was committed, in that in appellee's pleading charging negligence she alleged the starting of the string of cars "without giving any signal or alarm with the bell or whistle of the engine moving same," and that the court submitted to the jury to find if the agents of defendant did "suddenly start and move said string of cars, etc., without giving any alarm or notice of the moving of said cars." The gist of the negligence complained of was moving said cars without notice or warning. The manner of giving such was of minor importance. The negligence submitted is practically the same as pleaded, and couched in substantially the same language. This was sufficient. There is no merit in appellant's contention, and this assignment is overruled.

[5] In appellant's fourth proposition he contends that:

"In an action for death, a charge is affirmatively erroneous that does not expressly exclude from the jury's consideration the elements of sorrow, grief and loss of society."

The court charged on the measure of damages as follows:

"In estimating such amount, if any, you may take into consideration his probable earnings from the date of his death to the present time, and in the future, and such pecuniary benefits which you may find plaintiff would have received therefrom, if any, as well as the pecuniary value, if any, of his counsel, protection, and service to her, if any, had he lived, but you cannot take into consideration any mental distress or loss of his society by reason of his death."

The court does expressly, in the very language of appellant's proposition, expressly exclude from the consideration of the jury in estimating damages the "loss of his society." So the only question here involved is, Was it error for the court to charge, "But you cannot take into consideration any mental distress," instead of charging, "But you cannot take into consideration the elements of sorrow and grief?" "Mental distress" is a broader term, and includes "sorrow and grief," and we think we would not be justified in assuming that the jury did not have sufficient intelligence to so understand said term. There is no merit in this assignment, and it is overruled.

[6, 7] Under appellant's fifth proposition the contention is made that the court erred in permitting appellee to testify from hearsay that her husband made about $5 per day, and in refusing to strike out said evidence. The record discloses that appellee, on direct examination, stated that she knew what her husband was making prior to his death, and that she knew because she saw his pay check and his money, and that he was making about $5 per day. On cross-examination the witness was made to say that the check referred to was one received by the deceased while he worked for a rubber company in Ohio before he went to the war; that she and deceased were married after he returned from the war; and that, after he returned from the war, some 13 months later he worked for the Wells-Fargo Company a short time, and referring to his pay check again the witness said:

"Well, he was paid by the week, I think. Well I don't know just exactly the amount; it just amounted to about $5 per day."

It does not appear that all her evidence on what her husband earned was based on hearsay, but the inference is clear that at least a part of it was based on personal knowledge, and, the motion being to strike out all of it, the court was correct in overruling said motion. T. & P. Ry. Co. v. Hall, 31 Tex. Civ. App. 464, 72 S. W. 1052 (error refused); International & G. N. R. Co. v. The Dimmit

County Pasture Co., 5 Tex. Civ. App. 186, 23 S. W. 754; T. & P. Ry. Co. v. Donovan, 86 Tex. 378, 25 S. W. 10; Wells v. Hobbs, 57 Tex. Civ. App. 375, 122 S. W. 451; M., K. & T. R. Co. v. Washburn (Tex. Civ. App.) 184 S. W. 580. The deceased had recently returned from the war when injured, and, it appears, had not been able or had time to secure permanent employment. His desire to get work is evidenced by his going to the harvest fields in Kansas in an effort to get employment. We think there was no error in the action of the court in refusing to strike out this evidence. The record further discloses that the deceased was a stout, healthy, sober, industrious young man only 26 years of age. In estimating damages to a wife or minor children for the wrongful killing of the husband or father, there are many elements proper to be considered by the jury other than the amount of money he was earning. In fact, he may have been out of employment for a long time, or a young man just out of college, and not earning anything, but in neither instance could a wrongdoer be justified in negligently causing his death without compensating his dependents. In determining the value of the life of a husband or father to wife or children, one important element to be considered by the jury is, not the amount of money he is making at the time of his death, but his earning capacity, and in determining his earning capacity it is proper to consider his age, physical condition, training, habits of industry, the wages he is receiving, if employed, etc. There is no exact rule by which the value of a life is susceptible of accurate proof, and the evidence necessarily takes a wide range, and must be left to the jury. Dallas & Wichita R. Co. v. Spicker, 61 Tex. 427, 48 Am. Rep. 297; Brunswig v. White, 70 Tex. 504, 8 S. W. 85; Ft. Worth & D. C. R. Co. v Measles, 81 Tex. 474, 17 S. W. 124; Texas & P. R. Co. v. Yarbrough (Tex. Civ. App.) 73 S. W 845; St. Louis, S. F. & T. R. Co. v. Bolen, 61 Tex. Civ. App. 339, 129 S. W. 860; Rishworth v. Moss (Tex. Civ. App.) 191 S. W. 851; St. Louis, S. W. R. Co. v. Niblack, 53 Tex. Civ. App. 619, 117 S. W. 188; T. & P. R. Co. v. Perkins (Tex. Civ. App.) 284 S. W. 683; Waters Pierce Oil Co. v. Deselms, 212 U. S. 159, 29 S. Ct. 270, 53 L. Ed. 453; 17 C. J. p. 1352, §§ 237 and 238. There is no contention by assignment or otherwise that the verdict and judgment as to the amount are not supported by the evidence, or that same are excessive. We think no reversible error is shown here. The assignments raising the question here discussed are overruled.

[8] Under several assignments, appellant contends that:

"Where improper conduct of the jury is alleged as a ground for new trial, to the effect that the jury had agreed to award damages, and then proceeded to answer the questions so as to effectuate that purpose, the failure of the

trial court to permit evidence to sustain the allegation is reversible error."

In appellant's motion for new trial he alleged, upon information and belief, "that the jury agreed that the deceased was killed by the railroad company, and * * * that plaintiff was entitled to damages without reference to whether he was killed on Schaffer street or elsewhere," etc. To substantiate this alleged misconduct, appellant introduced in evidence two notes the jury sent to the court, as follows:

"Question No. 1. Do we have to answer 'Yes' or 'No' if we find the deceased was killed in the proximity of Schaffer street, and are ready to give our verdict?

"Question No. 2. If we find deceased was injured near Schaffer street crossing, can we in our verdict say, 'Yes, near?' "

For answer to these questions the court referred the jury to the court's charge. Appellant also put one of the jurors upon the stand, and asked·him the following question:

"In discussing the evidence in this case bearing on special issue No. 1, as to whether or not Hill was killed at Schaffer street, what was the object of the jury in asking the court if they could answer that issue, 'In the proximity of Schaffer street?' "

The court sustained objection to said question. The bill of exception shows that the witness would have answered, if permitted:

"Some of the jury, as well as I recall, was not sure, or had no evidence, that deceased was struck on the street named, but we believe that at or near the street crossing was why we asked the judge the question."

When misconduct of a jury in its deliberations is set up as grounds for a new trial, the questions to a juror called as a witness should be confined to the particular misconduct alleged. The misconduct alleged was that the jury agreed to answer special issue No. 1 so as to give appellee damages, regardless of whether the deceased was killed at said street crossing, and it was the duty of appellant to confine his inquiry to the question as to whether the jury made such agreement. The court was correct in sustaining objection to the question asked. However, if the juror had been permitted to answer, such answer would not have tended to prove the misconduct alleged. There is no merit in any of these assignments, and they are overruled.

[9, 10] Under several assignments appellant contends reversible error is shown by the following proceeding: While counsel was making his opening argument to the jury, he said:

"It seems to me, gentlemen, and I am warranted in saying it, that that man's testimony (Ferguson's) is made out of whole cloth from start to finish. If that is true, gentlemen, there has been an influence working in this case that was not proper."

As shown by the court's qualification to appellant's bill of exception to the above argument, the only objection urged was:

"There is no fact in evidence to justify it and no truth in it that there has been an improper influence working in this case,"

—and, upon this objection being made, counsel, who was making the argument, stated to the court, in the presence and hearing of the jury, as follows:

"My statement, if the court please, was that if this witness' testimony is not true, there has been an improper influence working in this case; that I make no reflection whatever on Mr. Harris; and, if there has been an improper influence working in this case, I don't think it was Mr. Harris."

Without undertaking to state the circumstances surrounding the testimony of the witness Ferguson, we do think they were such as to warrant the conclusion by counsel that his testimony was untrue, and, of course, if untrue, then the further conclusion that an improper influence had been brought to bear upon him. Counsel did not undertake to state any fact not in evidence, but to state his inference or conclusion from the facts in evidence in reference to the evidence of said witness. This was permissible and proper. Mo. K. & T. R. Co. v. Hibbitts, 49 Tex. Civ. App. 419, 109 S. W. 228; Trinity & B. V. R. Co. v. Dodd (Tex. Civ. App.) 167 S. W. 238; International & G. N. R. Co. v. Jones (Tex. Civ. App.) 175 S. W. 488. Counsel has the right to make a fair criticism of a witness and his testimony when the same is justified by the record, as shown here. These assignments are overruled.

What is said above applies, also, to appellant's objections to the following argument of appellee's counsel in his opening argument:

"Now, let us see some of the things that this witness Ferguson says: He, it seems like—I don't know who is responsible for it, but it just seems like somebody connected with the railroad company was not willing to let him attend so that that follow could testify in this case this time in person."

The witness Ferguson was, at the time of the trial, and had been for 12 years, in the employ of the railroad company at Cleburne. He is the husband of Mrs. Arch Ferguson. This suit was filed in September, 1919, and the deposition of appellee's witness King was then taken, showing Hill was injured at the Schaffer street crossing, and Ferguson never appeared as a witness until his deposition was taken February 23, 1924, after the case had been tried four times. He was present and testified in person on the trial directly after his deposition was taken. His deposition was not used on that trial. On cross-examination, the one time he did tes-

tify in person, it was developed that the witness Arch Ferguson told the general claim agent all he knew about the facts of the case, and gave him a list of the witnesses soon after the suit was filed in 1919. In his deposition, and also the one time he testified in person, he testified to an important circumstance tending to show Hill was injured some 540 feet south of Schaffer street; yet, notwithstanding he had told both the local and general claim agent what he knew in 1919, he did not appear as a witness either by deposition or in person until 1924, after the case had been tried four times. His wife attended all the six trials, and on the trial before the last testified to another important circumstance, according to the witness McAtee, that she had never testified to before, and said her husband, Arch Ferguson, according to her evidence, knew the same fact, and had known it since the date of the injury. At the time of the last trial the witness Arch Ferguson was still in the service of the railroad company at Cleburne, but did not appear and testify in person, and, in fact, has testified in person only the one time, although there have been six trials of the case. In his deposition taken in 1924 he testified:

"I am willing to attend the trial of this case and testify in person if the defendant would pay for my time and expenses."

But he was not present on the last trial, and his said deposition was used. The argument of appellee's counsel, of which complaint is made, does not undertake to state any fact, but only purports to be a deduction or conclusion of counsel drawn from the evidence. We have not undertaken to state all the evidence justifying the conclusion of counsel, but will say it was ample to warrant such conclusion. This was not an unfair criticism of the witness or the officials of the railway company, but was fully justified by the record. This assignment is overruled.

[11, 12] Under appellant's tenth, eleventh, and twelfth propositions, it contends that argument of counsel to the jury with reference to the financial inability of his client to produce witnesses, while opposing parties were able to bring witnesses "by the clouds," is highly prejudicial as a reference to the financial condition of the parties, is calculated to inflame the minds of the jury, and is reversible error, and that such error is not invited by argument of opposing counsel to the effect that no witness had been brought to testify to the good reputation of a witness for appellee or the bad reputation of one for appellant; and that an instruction from the court not to consider such argument does not cure the error, where the verdict of the jury is against the overwhelming weight of the evidence. The record discloses that while appellant's counsel was addressing the jury, he used the following language:

"And then he says there are 50,000 people in Limestone county, and only 8 or 10 or 12 came over here to testify to Bob King's reputation. Well, that is 8 or 10 or 12 out of 50,000 more than have come over here to testify to Bob King's good reputation. That is worthy of some consideration. This case has been tried six times, and yet they have not brought a single man from Limestone county who knew Bob King to testify that his reputation for truth and veracity was good. * * *

"In reference to the witness Ferguson, you are the judges of the credibility of his testimony and the weight to be given thereto. They have not brought anybody here to show that he is unworthy of belief. * * * If they thought he was not worthy of belief, Mr. Kibler just made a trip to Cleburne Thursday, why didn't he bring some one down here to testify that Arch Ferguson was not worthy of belief?"

In the closing argument of appellee's counsel, he said in reply:

"In counsel's argument he did just as I told you he would, and jumped onto our witness King. He suggested that we had not brought anybody from Limestone county to prove that Mr. King had a good reputation, and in corroboration of his witness Ferguson, he suggested that Mrs. Ferguson was not telling the truth, he asked why we had not brought some witnesses from Johnson county to establish that fact. My reply to that, gentlemen, is that there is a limitation, sometimes, on a party, when they are trying to carry on a lawsuit that keeps them from doing everything that they might do by way of finance. It might be, gentlemen, that we might have had a cloud of witnesses here from Limestone county to prove that Bob King, at least, is an ordinary respected citizen in the community where he lives, and we might have had some witnesses here from Johnson county to prove what character of man this man Ferguson is, if we had been financially able to do that. That is my reply to counsel's suggestion with reference to both of those witnesses. It seems like they were able to bring witnesses here by the clouds, many of them, almost any kind of a witness they wanted, in order to establish any kind of a fact they wanted to establish."

It is apparent from the record that the argument of appellee's counsel, claimed to be improper, was at least in part provoked or invited by the following part of the argument of appellant's counsel:

"They have not brought anybody here to show that he (Arch Ferguson) is unworthy of belief. * * * If they thought he was not worthy of belief, Mr. Kibler just made a trip to Cleburne Thursday, why didn't he bring some one down here to testify that Arch Ferguson was not worthy of belief?"

In fact, it seems the first part of the argument of appellant's counsel, copied above, had been provoked by a prior argument of appellee's counsel, and, when appellant's counsel had answered said prior argument, he went further, and indulged in the same character of argument in reference to appel-

lee's failure to produce witnesses to impeach appellant's witness Ferguson. Then appellee's counsel, in reply to appellant's counsel, made the argument of which complaint is made. We think this was, in a veiled and very mild way, a reference to the difference in the financial ability of appellant and appellee to produce witnesses or carry on a lawsuit, but was not an attempt to contrast or call attention to the poverty of appellee or the wealth of appellant, and, we think, it is equally apparent that at least a part of it was provoked or invited by argument of appellant's counsel. Counsel pursuing a line of argument not called for by facts invites a reply, and the party so represented cannot complain of objectionable language in reply. Texas, etc., R. Co. v. Garcia, 62 Tex. 285; Prather v. McClelland (Tex. Civ. App.) 26 S. W. 658. The jury saw and heard the evidence of the witnesses produced by appellant, and knew whether it was "a cloud of witnesses." They also heard the question of appellant's counsel, to the effect why did they not produce witnesses to prove King's good reputation and Ferguson's bad reputation. This required some reply, and we think it was permissible for appellee's counsel to suggest, "There is a limitation, sometimes, on a party in carrying on a lawsuit that keeps them from doing everything that they might do, by way of finance." We think, also, it is reasonably apparent that the argument of which complaint is made was not calculated to inflame the minds of the jury, or create bias in favor of appellee or prejudice against appellant. There is no indication that appellee's counsel went outside the record and indulged in remarks prejudicial, and did so for the purpose of inflaming the jury, and that they were probably influenced thereby. Appellant objected to the argument of which complaint is made at the time it was made, and the court promptly stopped appellee's counsel, sustained said objection, and instructed the jury not to consider same. This assignment, we think, should be overruled, because it was in part invited by argument of appellant's counsel; also because said argument was not of a character calculated to prejudice the jury against appellant; also because the court promptly sustained objection, and instructed the jury not to consider same; also because it does not appear that said argument was made for the purpose of improperly influencing the jury, nor that it did probably influence them, and therefore does not come within the rule in City of Mart v. Hasse (Tex. Civ. App.) 281 S. W. 318, and cases there cited; also the trial court, having heard said alleged improper argument, observed the method and manner of such argument, and having instructed the jury not to consider same, was in a position to know, better than this court, whether the jury was improperly influenced thereby. This alleged improper argument was urged as one of the grounds for a new trial, and in overruling said motion the court necessarily held no harmful effects resulted from said argument. In Tex. & P. R. Co. v. Garcia, supra, our Supreme Court, by Justice Stayton, said:

"The line and method of argument to be pursued by counsel in any stage of a trial is subject largely to the discretion of the trial court, and unless it appears very clearly that such discretion has been abused, this court would not feel authorized to reverse a judgment simply because it might be of the opinion that a different course should have been pursued." Tex. & P. R. Co. v. Garcia, 62 Tex. 289; Glover et al. v. Pfeuffer (Tex. Civ. App.) 163 S. W. 988; Nimitz v. Holland (Tex. Civ. App.) 217 S. W. 249, par. 9; Bowles et al. v. Bryan (Tex. Civ. App.) 277 S. W. 760, par. 12; Waco Mut. Life, etc., v. Alford (Tex. Civ. App.) 289 S. W. 93.

We overrule these assignments.

[13, 14] Under other assignments appellant contends the evidence is insufficient to support the judgment. At Cleburne the main line of the Gulf, Colorado & San Francisco Railway Company runs nearly north and south. The passenger depot is between Henderson and Chambers streets, running east and west, crossing the tracks of said railway. Its freight depot is a little less than a block south of the south end of the passenger depot, and its freight platform extends on south of its freight depot very nearly to Schaffer street. Schaffer street runs east and west, crossing the tracks of said railway, and also the tracks of the T. & B. V. Railway, and is the only street crossing said tracks south of Chambers street. About three blocks south of Schaffer street there is a switch track leading off from the main line of the Gulf, Colorado & San Francisco Railway track, extending in a northwest direction, crossing the tracks of the T. & B. V. Railway, which is west, near to, and parallel with, the tracks of the Gulf, Colorado & San Francisco Railway Company. From where this spur track crosses the tracks of the T. & B. V. Railway Company it is about 350 feet long. There are three transfer tracks along the east side of the Santa Fé freight depot and platform, which also cross Schaffer street. Also the tracks of the T. & B. V. cross Schaffer street, running just west of the Santa Fé depot. The deceased was, on August 7, 1919, run over by some box cars of the Gulf, Colorado & San Francisco Railway Company, and so badly injured that he died two days later. There were two theories about where he was run over; appellee contending he was knocked down and run over on the Schaffer street crossing, and the appellant contending he had gone about two blocks south of Schaffer street, across the tracks to the west side, and had lain down under some box cars on what is known as the new city spur track and gone to sleep. The suit was filed August 20, 1919, but appellant's amended answer raising the contention that deceased was not hurt on the

Schaffer street crossing, but was hurt on said spur track, was not filed until April 5, 1920.

R. R. King testified by deposition taken on September 12, 1919; That he and Hill were brothers-in-law. That he and Hill had come to Cleburne from Fort Worth over the interurban on their way to Temple, arriving about 1 o'clock p. m. at Cleburne. That, after they had dinner, they went to the Santa Fé depot to see when they could get a train for Temple. After waiting a while in the depot, Hill said he knew some people across the track, west and beyond the freight depot. and so they walked down to the freight depot for the purpose of locating the people Hill knew. At the south end of the freight depot King told Hill he was tired, and would wait there for him. That Hill walked on, going right to the dirt road crossing the railroad track, and was crossing the track at the end of some box cars, on the track with the end of said cars standing right next to the street, and, when the switch engine bumped into the cars, he looked around, and the drawhead on the cars hit Hill on the side, and knocked him down. That he, Hill, was right in the street, and where the sidewalk would have been had there been one. Hill was about 3 feet from the end of the cars, and in the street and right on the railroad track where it crosses the street. When the cars pulled off of him, he got up and ran about two car lengths, and fell, and that he, King, picked him up on his feet. That he then jerked loose from him, and ran about the length of a car and a half, and fell, and he lay there while King went to phone for a doctor. The doctor did not come for about 30 minutes, and that he (King) went across the track, west, to a residence, and phoned for the city ambulance. That there were no signals of any kind given by the train or engine at the time and just prior to said accident, and there was no one at the place where Hill was struck, nor on the cars at the time he was struck. "Hill never said a word to me after he was struck, but merely looked crazy at me, and has his face all bruised up." When the doctor and the ambulance arrived they picked Hill up between the spur track and the track of the T. & B. V. Railway some 540 feet south and a little west of the Schaffer street crossing. His shoes and coat were off, and lying by him on the ground.

On the 20th day of September, 1922, the depositions of the witness King were again taken, and he testified as follows on another phase of the matter:

"After I had asked the man at the yard office to phone for a doctor, and I had returned to where Hill fell, I went up to the crossing where he was struck, and got his hat and coat, and waited there where Hill fell some little time. The doctor did not come. Hill was suffering greatly, and muttering and groaning. He sat up, and was getting on his feet, and I helped him up. It didn't look like the doctor was coming, and, after he got up, it occurred to me that maybe I could get him over to the home of his friend where we had started when we left the passenger depot. He walked along with me for some distance until we got over by some box cars on a side track, where he sat down, complaining and muttering, crazy talking way, that his feet and legs were broke or mashed, and tried to take off one of his shoes, or started to, and I asked him if he wanted his shoes off. He didn't say anything, but stretched out on the ground and I pulled his shoes off. I then went across the track, and phoned for the ambulance. I then went back to where Hill was, and in a little while the doctor and the ambulance came. * * * When I tried to get him over to his friend's house, I carried his coat along with mine on my arm."

The ambulance carrying Hill arrived at the sanitarium at 4:30. Hill's feet and legs did not appear to be injured, but the injury seemed to be to his spine.

As stated above, there were three transfer tracks east of the freight depot and platform, which extended up to and across Schaffer street, and two of them extended some 600 feet south of Schaffer street. There was one transfer track and the main line of the T. & B. V. immediately west of the freight depot and platform, which crossed Schaffer street, and extended some 600 feet south of said street. Schaffer street was used by the public in crossing the tracks of both railway companies, being the only street crossing south of the one just south of the depot. There was a switching crew, composed of five men, engaged in switching cars all the afternoon of August 7th, the date on which Hill was injured, in what is known as the south yard; that is, in the vicinity of the freight depot both north and south of Schaffer street. There is no evidence in the record that there was not a string of cars on one of these tracks, extending up to the south line of Schaffer street, on said afternoon, and no evidence that a switch engine did not bump into said cars, shoving them across, or partially across, Schaffer street. In fact, said switching crew do not undertake to give any account of what they did that afternoon, except from about 3:30 to 3:45 or 4 o'clock, and during this time they pulled four bad order cars from the second transfer track east of the depot across Schaffer street, and about 600 feet south, and shoved them in on the new city spur track. They said there were already three cars on this spur track. As two, and a part of the time three, of the members of this switching crew were on the ground along by the side of this spur track at the time said cars were shoved in, if Hill had been lying down under one of those three cars when they were shoved, and he was injured as contended by appellant, we think it very probable some member of this crew would have heard an outcry from him, or have seen him, or in some way discovered his presence.

Appellant made a very strenuous effort in

various ways to discredit the witness King. He contends King's second deposition is contradictory of his first; but we think this is not shown by the record. We have not the questions before us that were propounded to King in taking either the first or second deposition, but the presumption is that his answers in each deposition were responsive to the questions, and there is nothing in the record to indicate that there was any question asked in taking his first deposition with reference to the matters testified to by him in his second deposition. Some of appellant's witnesses testified that, after the ambulance arrived, and before Hill was removed to the sanitarium, and after Hill was taken to the sanitarium, King made statements as to how the injury occurred contradictory of his evidence as contained in his depositions, but others of appellant's witnesses contradict this evidence. There is evidence that Hill, the deceased, made statements contradictory of the witness King as to how he was injured, but there is other evidence to the effect that Hill was talking at random, and partially unconscious. That Hill was run over by appellant's cars and mortally wounded is not denied. He was run over at the Schaffer street crossing, as contended by appellee, or he was run over some 540 feet south of Schaffer street while lying under some cars on what was known as the new city spur track; and, as stated above, according to the evidence of this switching crew, it is not at all probable that these cars could have been shoved over Hill and injured him as he was injured and this crew know nothing about it. King was the only witness who claimed to have seen the accident. His statement of how the injury occurred is reasonable, and, while there are some circumstances that tend to contradict him, and some statements that do directly contradict him, there are other circumstances that corroborate his evidence. On the last appeal of this case (272 S. W. 291), while this court was not called upon to determine if the evidence was sufficient to support the judgment, this court did hold that the trial court was correct in submitting the case to the jury, thereby holding in effect, that the question of the liability of appellant was a question of fact for the determination of the jury. The evidence on the last trial was practically the same as on the former, and, after a re-examination of the evidence, we are still of the opinion that the question of the liability of appellant was a question of fact to be determined by the jury. We have not undertaken to set out all the evidence, but have considered all of it, and it is our opinion that the findings of the jury are sufficiently supported by the evidence, and that this court should not interfere with such findings. Cartwright v. Canode, 106 Tex. 502, 171 S. W. 696; Choate v. Railway Co., 90 Tex. 82, 36 S. W. 247, 37 S. W. 319; Ft.

291 S.W.—44

Worth & D. C. R. Co. v. Decatur Oil Co. (Tex. Civ. App.) 193 S. W. 393; Farmer's, etc., Gin Co. v. Simmons (Tex. Civ. App.) 178 S. W. 621; Moore v. Rogers, 84 Tex. 1, 19 S. W. 283; Beaumont Traction Co. v. Happ, 57 Tex. Civ. App. 427, 122 S. W. 610; Brady v. Maddox (Tex. Civ. App.) 124 S. W. 739.

Finding no reversible error, we overrule all of appellant's assignments, and affirm the judgment of the trial court.

BARCUS, J. (dissenting). I regret I cannot agree to the disposition of this case as made by my associates. This litigation has been in the courts since 1919, and, as shown by the record there have been six trials on the facts. This is the third appeal from a trial on the facts. On the first appeal the cause was reversed because of the insufficiency of the testimony to support the verdict. Payne v. Hill (Tex. Civ. App.) 242 S. W. 302. On the second appeal the cause was reversed because of the improper argument of counsel. Davis v. Hill (Tex. Civ. App.) 272 S. W. 291. The testimony introduced on the last trial is practically the same as that on the last appeal; a large portion thereof being read from the testimony as given in the former trial.

Appellant, by timely objection and proper exceptions, presents in this court error based on the argument of counsel for appellee, which in my opinion should be sustained. Appellee's counsel in the opening argument stated to the jury:

"It looks to me, gentlemen, and I am warranted in saying it, that that man's (Ferguson's) testimony was made out of whole cloth from start to finish. If that is true, gentlemen, there has been an influence working in this case that was not proper."

Said statement was objected to on the ground that it was improper and prejudicial, and not supported by the evidence. Counsel for appellee further in his opening argument stated:

"Now, let's see some of the things that this witness Ferguson says. He, it seems like—I don't know who is responsible for it, but it just seems like somebody connected with the railroad company were not willing to let him attend, so that that fellow could testify in this case this time in person, and they depended on his deposition."

Said argument was excepted to because of being prejudicial and not supported by the testimony, and because it was highly inflammatory. Counsel for appellee again in his opening argument stated to the jury:

"Not only that, gentlemen, with the ingenuity and the energy that it looks like the railroad company has exercised to get witnesses here in this case, doesn't it seem strange, gentlemen, that an important witness like this man (Ferguson) couldn't have gotten here for this trial even?"

This argument was objected to because it was highly inflammatory and not supported by the facts. Counsel for appellee 'then stated:

"I will ask the court to instruct the jury not to consider that last statement. I don't want to get out of the record."

Again in his closing argument counsel for appellee stated:

"It seems like they (the agents for the railway company) were able to bring witnesses here by the clouds, many of them, almost any kind of a witness they wanted, in order to establish any kind of a fact they wanted to establish."

Counsel for appellant objected to that line of argument, and, after some argument with the court in which the trial court stated there was no evidence about the financial ability of the parties, counsel for appellee stated:

"If the court feels like that is not in the record, then I will ask the court to instruct the jury to disregard it,"

—and the court instructed the jury not to consider that argument on the part of counsel.

I think the above argument of counsel is as harmful as that for which the cause was reversed by this court on the former appeal, and in which opinion the court correctly stated:

"In this case the question of liability was very close. The evidence to show liability was rather unsatisfactory, and, while we cannot say that the verdict of the jury is against the manifest weight and the great preponderance of the evidence, or that said verdict is clearly wrong, yet the verdict seems to be against the preponderance of the evidence, and in such instances special care should be taken by the trial court and by counsel in their argument to leave the jury, free, and untrammelled from any possible influence of improper argument, to decide the case only upon matters proper for their consideration." Davis v. Hill (Tex. Civ. App.) 272 S. W. 291.

The record shows that the witness Ferguson was a very important one for appellant. His wife, Mrs. Ferguson, testified on the stand that Mr. Ferguson was a truck driver at Cleburne, and was operating several trucks, and that he did hauling for the railway company at times; that, while the trial of this case was in progress, he (Mr. Ferguson) was not working for the appellant railway company, but was operating three trucks, and using a number of men, and that for said reason he could not attend in person on the trial of the case. I do not agree with the statement of fact in the majority opinion that at the time of the trial Mr. Ferguson was working for appellant. Mrs. Ferguson testified positively that at the time of trial he was not working for the appellant, and no effort was made to contradict her testimony. There is no power lodged in a trial court or in litigants to force a witness from one county to another to testify. The only method by which the testimony of witnesses who live without the limits of the county can be obtained is by deposition, or by the witnesses voluntarily coming into court. For counsel in his argument to attempt to obtain a verdict from the jury by stating to them that Ferguson's testimony, according to his opinion, was "made out of whole cloth from start to finish," and that, if his opinion was correct, "there had been an influence working in the case that was not proper," and, further, that "it seems to me like somebody connected with the railway company was not willing to let Ferguson. come into court and testify, but depended on his depositions," and, further, that "the plaintiff (appellee) was not financially able to bring witnesses to court, but that it seems like they (appellant) were able to bring witnesses here by the clouds, many of them, almost any kind of a witness they wanted, in order to establish any kind of a fact they wanted to establish," is most highly prejudicial, and unwarranted by any facts in the record, and I do not think counsel can remove the harm by making improper argument, and then, as in this case, asking the court to instruct the jury not to consider same. He cannot stab and remove the dagger without a wound being left. There is nothing in the record to indicate that the railway company had used any undue influence on the witness Ferguson. The depositions that were introduced had been on file since prior to the former trial of the case. The question of the financial ability of the respective litigants should not have been in any way commented upon. As said in the former opinion, I think counsel should be careful in the argument they use, so that the jury might be left untrammelled to decide the issues upon the facts in the record. I think the argument complained of here comes within the rule announced by the court in St. L. S. W. R. Co. v. Brazelton, 290 S. W. 825, this day decided by this court.

Appellant assigns error to the action of the trial court in permitting appellee Mrs. Hill to testify that her husband was earning about $5 a day, and that she knew said fact, because she saw his pay check and money, over its objection that said testimony was hearsay. Appellant further assigns error to the action of the trial court in refusing to exclude the above testimony of Mrs. Hill, after it had developed on cross-examination of Mrs. Hill, that the only pay check of Mr. Hill that she saw, and the only information she had about what he was earning, was' with reference to a check which he showed her, and what he told her he was earning

at Akron, Ohio, at least 16 months before she married Hill, and prior to the time he entered the army. The record shows Hill was in the army 13 months, and was discharged about April or May before he was killed in August, and that, since he returned from the army, he had worked for the Wells-Fargo Company at Temple, and had worked in the harvest fields in Kansas. Mrs. Hill testified she did not know the wages he received from either of said last two employers, and that she did not know whether while working at Akron, Ohio, he was paid by the day, week, or month, but that she thought it was by the week, and she thought his check amounted to about $5 a day. After said testimony had been developed on cross-examination, appellant moved to strike out all of appellee's testimony with reference to her husband's earning capacity, because same was hearsay, and because what he was earning 18 months before his death in Akron, Ohio, would not be evidence as to what he was earning at the time of his death. The court overruled said motion. I think the court erred in refusing to strike said testimony from the record. Appellee's testimony was the only testimony offered as to the earning capacity of the deceased, and the court instructed the jury that, in arriving at the amount of damages, they would allow appellee, "they might take into consideration Mr. Hill's probable earnings from his death until the time of the trial and his future earnings, and such pecuniary benefit that they might find Mrs. Hill would have received therefrom."

If said testimony had been excluded, there would have been no evidence before the jury which would have authorized said charge to be given, or which would support a verdict based on the earning capacity of the deceased. Panhandle, etc., R. Co. v. Reed (Tex. Civ. App.) 273 S. W. 616; Western Oil Fields Corp. v. Nowlin (Tex. Civ. App.) 288 S. W. 554.

Appellant assigns error to the action of the court in permitting the court reporter, Mr. McAtee, to testify that he had examined all of the testimony as shown by his shorthand notes on the former trials, and that on none of said trials had Mrs. Ferguson testified to seeing any marks on the ground between the rails under one of the cars on the city spur track near where Hill was lying. Appellant objected to said testimony, because it was immaterial and irrelevant, and because no proper predicate had been laid for impeachment of the witness. I think this assignment should be sustained. There had been no proper predicate laid to impeach Mrs. Ferguson. I do not agree with the finding of fact in the majority opinion which

states that "the record discloses that appellee's counsel had asked Mrs. Ferguson if it was not a fact she had not testified to such (material) fact in any of the former trials, and that the witness (Mrs. Ferguson) affirmed she had testified to said fact on each of said trials." The only question counsel for appellee claim to have asked her with reference to this matter as a basis for the testimony of Mr. McAtee for impeaching purposes, as shown by the bill of exception copied at length in the record, was:

"On the last trial of this case, Mrs. Ferguson, after you had gotten on the stand and testified to seeing those marks under that car between the rails, didn't I ask you the question: 'Is it not a fact that is the first time that you have testified to that fact?'"

The record shows Mrs. Ferguson in reply to the above question stated:

"I think I testified every time that it showed in the tracks where he was laying, or something similar to that, the best I can remember."

It appears from the above question that the witness was only asked to answer whether or not she had been asked a certain question. This was wholly immaterial, and our courts have uniformly held that a witness cannot be impeached on an immaterial issue. Tex. & P. R. Co. v. Phillips, 91 Tex. 278, 42 S. W. 852; Beaumont S. L. & W. R. Co. v. Manning (Tex. Civ. App.) 186 S. W. 387. Appellee did not ask that the answer be stricken out because not responsive to the question, and did not ask any further question as a predicate for impeachment of the witness. There was considerable argument pro and con by counsel for appellee and appellant before the court and jury with reference to the testimony being admissible, and counsel for appellee repeatedly told the court that he had laid the proper predicate for the testimony to be admitted for impeachment purposes, and that he was offering same alone for said purpose, and in the presence of the jury repeatedly stated that it was highly important testimony for said purpose. The court qualified the bill of exception by stating that the testimony was admitted because the court thought the proper predicate for impeachment had been laid; and that said was admitted only for said purpose. I think the court was in error in holding that a proper predicate for impeachment had been laid, and in admitting the testimony for said purpose, and I think the same should have been excluded.

In my opinion, the judgment of the trial court should be reversed and the cause remanded.